**FEDERAL DEPOSIT INSURANCE COR-PORATION, as Receiver for Sunrise Savings and Loan Association, a Federal Savings and Loan Association, Plaintiff,**

v.

**VEREX ASSURANCE, INC., Defendant.**

**No. 88–1383–CIV.**

United States District Court, S.D. Florida.

May 28, 1992.

Craig P. Kalil, Squire, Sanders & Dempsey, Miami, Fla., for F.D.I.C.

Gerald Wald, Murai, Wald, Biondo & Moreno, P.A., Miami, Fla., for Verex.

ORDER ENTERING SUMMARY FINAL JUDGMENT FOR VEREX ASSURANCE, INC. AND DENYING SUMMARY FINAL JUDGMENT FOR FDIC

ARONOVITZ, District Judge.

This action was brought by Plaintiff Federal Deposit Insurance Corporation ("FDIC") against Verex Assurance, Inc. ("Verex") to recover sums allegedly due and owing under two certificates of insurance issued pursuant to a standard mortgage guaranty insurance policy. Verex counterclaimed seeking rescission of the two certificates of insurance. The matter is now before the Court upon the parties' cross-motions for summary judgment in connection with Counts I and II of Plaintiff's Complaint and Counts I and II of Defendant's Counterclaim.[1]

Having considered the Motions, responses, replies, oral argument of counsel, applicable law, and the pertinent portions of the record, and being otherwise fully advised in the premises, the Court herein files the following Memorandum Opinion.

## I. BACKGROUND

*Undisputed Facts*

Plaintiff FDIC is the successor in interest to the FSLIC, which was the receiver for Sunrise Savings and Loan Association ("Sunrise"). Defendant Verex is an insurer of mortgage loans on residential real property, insuring lenders against loss when borrowers default on their mortgage loans.

Prior to 1983, Verex issued a standard Master Policy of Insurance ("Policy") to Sunrise. Pursuant to the terms of this Policy, Sunrise submitted applications for residential mortgage guaranty insurance with respect to each loan for which it desired coverage under the Policy. Each application package for insurance consisted of the purchase contract for the property, the borrower's residential loan application,

---

**1.** The parties are in accord that the essential    facts of this case are undisputed.

credit reports, Sunrise's verification of the borrower's deposits and employment, an appraisal, and various closing documents.

On April 29, 1983, Sunrise sent a standard application package to Verex for insurance on a $450,000 mortgage loan that Sunrise had made to Frank and Patti Ferrero ("Ferreros"). On May 5, 1983, Verex issued an insurance commitment in connection with this mortgage loan; the commitment became a certificate of insurance after the loan was closed and the premium paid.

Two of the items in the application package sent by Sunrise to Verex contained material misrepresentations made by the Ferreros, of which neither Sunrise nor Verex was aware. In particular, the Ferreros misrepresented the amount of their down payment on the house—rather than investing $125,000 cash in the property as they had claimed, the Ferreros had only invested $25,000 and had given two $50,000 promissory notes to the sellers, who were relatives of the Ferreros. The Ferreros had deceived Sunrise by tendering a personal check for $50,000 payable to the sellers at the closing—a check that was subsequently returned to the Ferreros.

A similar set of circumstances infected a $45,100.00 loan made by Sunrise to Juan and Lisa Bonilla ("Bonillas"). The Bonillas misrepresented the amount of their down payment on their property to Sunrise, who unwittingly submitted these misrepresentations to Verex through the application package. On July 21, 1983, Verex issued an insurance commitment to Sunrise in connection with this mortgage loan; this commitment later ripened into a certificate of insurance.

Both the Ferreros and Bonillas subsequently defaulted on the loans made to them by Sunrise. Thereafter, Sunrise sought to recover the mortgage guaranty insurance proceeds for these loans under the Policy. Verex refused to pay these claims, arguing that Sunrise's unknowing material misrepresentations precluded recovery under the Policy. This lawsuit ensued.

## II. ANALYSIS

Neither Sunrise nor Verex knew of any of the material misrepresentations or omissions contained in the application packages for guaranty insurance. In that sense, this dispute is between two "innocent" parties. Unfortunately, one of the innocent parties must bear the loss associated with the material misrepresentations made by the borrowers. The central issue facing this Court is whether, under Florida law, this loss should be borne by the bank or by the mortgage guaranty insurer.

The law in Florida protects an insurer from material misrepresentations made by an insured in an application for insurance, by precluding recovery under the policy. Section 627.409 of the Florida Statutes (1991) provides, in pertinent part, as follows:

(1) All statements and descriptions in any application for an insurance policy or annuity contract ... shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:

(a) They are fraudulent;

(b) They are material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(c) The insurer in good faith would either not have issued the policy or contract ... if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

This statute has been construed to bar recovery from an insurer even if the material misrepresentations made by the insured were unintentional. *See Continental Assurance Co. v. Carroll*, 485 So.2d 406 (Fla. 1986).

While the scope of protection provided by section 627.409 plainly covers casualty, life, and health insurers, Verex is not a traditional insurer. Rather, Verex is a mortgage guaranty insurer; since 1959, mortgage guaranty insurers have been governed by a separate chapter of the Florida

statutes, Chapter 635, titled Mortgage Guaranty Insurance. Chapter 635 does not contain a section, like section 627.409, which expressly protects mortgage guaranty insurers from material misstatements made by insureds.

For years, however, the absence of a "material misrepresentation" section in Chapter 635 was of little significance. The courts that addressed the issue had held that section 627.409 also protected mortgage guaranty insurers against material misrepresentations made by insureds in an application package.[2] *See United Guarantee Resid. Ins. Corp. of North Carolina v. American Pioneer Savings Bank,* 655 F.Supp. 165 (S.D.Fla.1987); *Continental Mortgage Insurance Inc. v. Empire Home Loans, Inc.,* No. 75–1099–CIV–JLK (S.D.Fla. Nov. 26, 1975).

*Enactment of Section 635.091*

Effective October 1, 1983, however, section 635.091 was added to Chapter 635 of the Florida Statutes, providing as follows:

> The following provisions of the Florida Insurance Code apply to mortgage guaranty insurers; chapter 624; chapter 625; parts I, II, VIII, and X of chapter 626; s. 627.915; chapter 628; and chapter 631.

Section 635.091 plainly purports to set forth those parts of the Insurance Code applicable to mortgage guaranty insurers. Section 627.409 is not among those provisions expressly incorporated into Chapter 635.

In *Home Guaranty Ins. Corp. v. Numerica Financial Services, Inc.,* 835 F.2d 1354 (11th Cir.1988), the Eleventh Circuit held that section 627.409 does not apply to mortgage guaranty insurance contracts entered into after October 1, 1983, because section 627.409 had not been expressly incorporated into section 635.091. The court relied on the cardinal rule of statutory construction "expressio unius est exclusio alterius," which means that the express mention of one thing is the exclusion of the

other. *Numerica,* 835 F.2d at 1357 (11th Cir.1988); *see State ex rel. Shevin v. Indico Corp.,* 319 So.2d 173, 175 (Fla. 1st DCA 1975).

Had the Ferrero and Bonilla certificates been issued by Verex after October 1, 1983, the disposition of this case would require nothing more than a straightforward application of the Eleventh Circuit's holding in *Numerica.* Under those circumstances, Verex would be required to bear the loss associated with the material misrepresentations.

In this case, however, the certificates of insurance were issued before the enactment of section 635.091 on October 1, 1983. Whether section 627.409 applied to mortgage guaranty insurance before October 1, 1983 has not been directly addressed subsequent to the decision in *Numerica* and the enactment of section 635.091. Thus, the issue facing this Court is one of first impression: Did the Florida legislature enact section 635.091 to clarify that section 627.-409 does not govern mortgage guaranty insurance law, or was section 635.091 enacted to impliedly repeal the application of section 627.409 to mortgage guaranty insurance?

*Application of Section 627.409*

In this regard, *Numerica* does not offer much guidance. Specifically, the Eleventh Circuit left open the question of whether section 627.409 ever applied to Mortgage Guaranty Insurance contracts prior to the enactment of section 635.091 on October 1, 1983. The *Numerica* court wrote:

> First, it is unclear that Section 627.409 ever applied to mortgage guaranty insurance ... It is possible that the legislature has expressly incorporated various parts of the Insurance Code partly in order to clarify that many other parts of the Insurance Code, including Section 627.409, do not govern mortgage guaranty insurance law ... Second, even if the legislature had originally intended Sec-

---

**2.** Importantly, the material misrepresentations made by the borrowers in their application for loans from Sunrise are imputed to Sunrise since the application package for mortgage guaranty insurance submitted to Verex contained those same misrepresentation. *See United Guarantee Resid. Ins. Corp. of North Carolina v. American Pioneer Savings Bank,* 655 F.Supp. 165, 168 (S.D.Fla.1987).

tion 627.409 to apply to mortgage guaranty insurance, Section 635.091 changes this.

The FDIC argues that the failure of the legislature to incorporate section 627.409 into Chapter 635 makes it clear that section 627.409 never applied to mortgage guaranty insurance. The FDIC cites language in *Home Guaranty* that "mortgage guaranty insurers do not require the protection provided by section 627.409," *Home Guaranty*, 835 F.2d at 1357–58, to bolster this argument.

Verex, on the other hand, argues that the two pre-*Numerica* district courts that addressed the application of section 627.409 to insurance certificates issued prior to October 1, 1983 both held that section 627.409 *does* cover mortgage guaranty insurance. *See United Guarantee Resid. Ins. Corp. of North Carolina v. American Pioneer Savings Bank*, 655 F.Supp. 165 (S.D.Fla.1987); *Continental Mortgage Insurance Inc. v. Empire Home Loans, Inc.*, No. 75–1099–CIV–JLK (S.D.Fla. Nov. 26, 1975). Verex further contends that, prior to 1983, the Florida legislature never evinced a desire to afford less protection to mortgage guaranty insurers than to traditional insurers.

The language of the various provisions of the Florida Insurance Code does not offer much guidance in resolving this matter. Indeed, the complexity of this case is exacerbated by the seemingly convoluted scheme embodied in the Code. The Code is replete with apparent conflicts and inconsistencies. For example, section 627.401, titled "Scope of this part," lists the types of insurance which are *not covered* by Chapter 627. Mortgage guaranty insurance is not listed among those types of insurance *not covered* by Chapter 627. Under the rule of "expressio unius est exclusio alterius," therefore, mortgage guaranty insurance would appear to be covered by Chapter 627, and hence section 627.409. Yet, this construction conflicts with the *Numerica* court's holding that section 627.409

does not apply to mortgage guaranty insurance because of section 635.091.

Nonetheless, we agree with the decisions of our sister courts in *Empire Home Loans* and *United Guarantee* and hold that section 627.409 applied to mortgage guaranty insurance prior to the enactment of section 635.091. This holding is supported by several factors: First, section 627.401 did not expressly include mortgage guaranty insurance among those types of insurance *not covered* by section 627.409 prior to the enactment of section 635.091. Second, the enactment of section 635.091 incorporating other provisions of the Insurance Code into Chapter 635 illustrates that Chapter 635 was not intended to be a comprehensive and all-inclusive declaration of the rights of mortgage guaranty insurers.

In so deciding, we necessarily hold that the enactment of section 635.091 constituted an implied repeal of section 627.409 *as it applies to mortgage guaranty insurance.* This holding is unavoidable under the circumstances, and regrettable in that such decisions are best left in the hands of either the Florida Supreme Court or the Florida legislature.[3]

Accordingly, Verex is entitled to summary judgment on its claims for rescission of the certificates of mortgage guaranty insurance issued to Sunrise with respect to the Ferrero and Bonilla loans. Those certificates are declared void because of the material misrepresentations contained within the application packages submitted to Verex by Sunrise.

*Conclusion*

For the foregoing reasons, it is

ORDERED and ADJUDGED that Verex's February 24, 1992, Motion for Summary Judgment be and the same is hereby GRANTED, and the FDIC's February 24, 1992, Motion for Summary Judgment is hereby DENIED. Based thereon, FINAL

---

**3.** The United States District Court is not empowered to certify questions of Florida law to the

Florida Supreme Court.

JUDGMENT is hereby entered on behalf of Verex.

DONE AND ORDERED.