3 F.3d 391
 FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for
Sunrise Savings and Loan Association, a Federal
Savings and Loan Association, Plaintiff-Appellant,
v.
VEREX ASSURANCE, INC., Defendant-Appellee.
 No. 92-4591.
 United States Court of Appeals, Eleventh Circuit.
 Oct. 1, 1993.
 
 Craig P. Kalil, Alan L. Briggs, Squire Sanders & Dempsey, Miami, FL, for plaintiff-appellant.
 Gerald B. Wald, Marianne A. Vos, Murai Wald, Biondo & Moreno, P.A., Miami, FL, for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before EDMONDSON and CARNES, Circuit Judges, and HILL, Senior Circuit Judge.
 HILL, Senior Circuit Judge:
 
 
 1
 Appellant Federal Deposit Insurance Corporation ("FDIC") brings this appeal from the district court order granting summary judgment to Appellee Verex Assurance, Inc. ("Verex"). 795 F.Supp. 404. FDIC sought to recover sums allegedly due and owing under two certificates of insurance issued pursuant to a standard mortgage guaranty insurance policy. The district court held Verex was entitled to rescind the two certificates of insurance due to material misrepresentations contained in the application packages for the certificates. FDIC contends this judgment is erroneous.
 
 
 2
 FDIC presents three issues in this appeal. First, whether misrepresentations contained in the borrowers' loan documents could be imputed to the financial institution that included these documents in its applications for insurance submitted to Verex. Second, whether the borrowers' misrepresentations could be imputed to FDIC. Finally, FDIC contends that Florida Statutes section 627.409 did not govern mortgage guaranty insurance contracts at the time these insurance certificates were issued, and therefore the certificates are not voidable by virtue of the misrepresentations. We decide the first two issues, affirming the district court, and certify the third to the Supreme Court of Florida, with a memorandum, attached hereto as Appendix A.
 
 I. Background
 
 3
 This case involves two certificates of insurance issued under a master mortgage guaranty insurance policy by Verex in favor of Sunrise Savings & Loan ("Sunrise"). FDIC is the successor-in-interest to the Federal Savings & Loan Insurance Corporation, which was the receiver for Sunrise. Verex is an insurer of mortgage loans on residential real property, insuring lenders against loss when borrowers default on their mortgage loans.
 
 
 4
 Prior to 1983, Verex issued its standard Master Policy of Insurance ("Policy") to Sunrise. Under the terms of this Policy, Sunrise submitted applications to Verex for residential mortgage guaranty insurance with respect to each loan for which it desired coverage under the Policy. Each application package for insurance consisted of the purchase contract for the property, the borrower's residential loan application, credit reports, Sunrise's verification of the borrower's deposits and employment, an appraisal, and various closing documents. The two certificates of insurance involved in this case provided that Verex would pay 20% of any losses suffered by Sunrise on the residential mortgage loans if the borrowers defaulted.
 
 
 5
 On April 29, 1983, Sunrise sent a standard application package to Verex for mortgage guaranty insurance on a $450,000 mortgage loan that Sunrise had made to Frank and Patti Ferrero ("Ferreros"). On May 5, 1983, Verex issued an insurance commitment in connection with this loan; the commitment became a certificate of insurance after the loan was closed and the premium paid. Unknown to Sunrise and Verex, the Ferreros misrepresented the amount of their down payment and paid considerably less out of pocket than the figure stated on their loan application. Sunrise and Verex relied upon this misrepresentation.
 
 
 6
 Sunrise also made a $45,100.00 mortgage loan to Juan and Lisa Bonilla ("Bonillas") around the same time. Like the Ferreros, the Bonillas misrepresented to Sunrise the amount of their down payment, and Sunrise unwittingly submitted this misrepresentation to Verex through the certificate of insurance application package. On July 21, 1983, Verex issued an insurance commitment to Sunrise in connection with this mortgage loan and this commitment later ripened into a certificate of insurance.
 
 
 7
 Both the Ferreros and the Bonillas subsequently defaulted on the mortgage loans. Sunrise sought reimbursement from Verex on the mortgage guaranty insurance certificates under the Policy. Verex refused to pay on the certificates, alleging that the material misrepresentations in the certificate applications precluded recovery under the Policy.
 
 
 8
 The district court entered summary judgment in favor of Verex. It held that the certificates of insurance were void because of the material misrepresentations contained within the application packages submitted to Verex by Sunrise. In reaching this decision, the district court concluded that section 627.409[1] of the Florida Statutes (1991) undisputedly provides that when a borrower misrepresents a material fact in a loan application, which misrepresentation is transmitted as part of an application for insurance, the risk of loss from the loan is placed on the bank rather than the bank's insurer. After noting that the question of whether Sec. 627.409 applied to mortgage guaranty insurance policies prior to October 1, 1983 was unsettled, the district judge concluded that Sec. 627.409 did apply to these two certificates of insurance. FDIC challenges the district court's application of Sec. 627.409 in this appeal.
 
 II. Discussion
 
 9
 FDIC presents three arguments on this appeal. First, FDIC contends that the district court erred in determining that the misrepresentations made by the borrowers could be imputed to Sunrise. Second, FDIC asserts that imputation of the borrowers' misrepresentations to FDIC contravenes federal common law. Finally, FDIC claims that Sec. 627.409 did not apply to mortgage guaranty insurance prior to October 1, 1983, and thus did not operate to invalidate the two certificates of insurance at issue in this case. We consider each of these arguments in turn.
 
 A. Imputation to Sunrise
 
 10
 FDIC argues that while the loan documents provided by the borrowers contained material misrepresentations, the applications for certificates of insurance submitted by Sunrise to Verex made no misrepresentations. The lack of a material misrepresentation by Sunrise is important because in order to avoid the insurance certificates under section 627.409, Verex must show that Sunrise made a material misrepresentation in its application for insurance. FDIC acknowledges Sunrise submitted a package including the borrowers' loan documents with its applications for insurance, but points out that the Master Policy had no language requiring Sunrise to adopt the representations of the borrowers. This lack of adoption contrasts with a 1985 revision to the Policy that expressly states that a lender applying for mortgage guaranty insurance adopts the representations of the borrower contained in the application package, according to FDIC.
 
 
 11
 Another argument presented by FDIC is based on the case of St. Paul Fire & Marine Ins. Co. v. Mayor's Jewelers of Ft. Lauderdale, Inc., 465 F.2d 317 (5th Cir.1972).[2] In St. Paul the insured requested additional coverage under his property insurance policy. The insurance company agreed to extend the coverage on the condition that the insured could verify that he had a specific type of burglar alarm. After telling the insurer that he did not know what type of alarm was installed, the insured called his security company which informed him that he had the requisite type of alarm. The insured then called the insurance company and reported what the security company had told him. This information later turned out to be false. St. Paul, 465 F.2d at 320-21. The court held that the insured had made no misrepresentations because he merely faithfully reported what the security company had told him. FDIC insists that this case is on point with St. Paul because Sunrise simply reported information supplied by the borrowers in its loan applications. Therefore, FDIC argues Sunrise made no misrepresentations and cannot be charged with those made by the borrowers.
 
 
 12
 We are not persuaded by FDIC's arguments that the misrepresentations made by the borrowers should not be imputed to Sunrise. The Master Policy in effect at the time of issuance of these certificates stated that Verex issued the certificates "in reliance upon the statements made in the Application submitted by the insured." The Policy required Sunrise to supply "an Application in connection with each loan for which coverage under the policy is desired, on forms furnished and with requirements prescribed by" Verex. The parties agree that Sunrise was required to furnish the borrowers' loan documents as part of the "requirements prescribed by" Verex. Thus, under the language of the Policy, the applications Verex required Sunrise to submit included all statements made in the borrowers' loan documents. The Policy indicates that the insurance certificates were issued in reliance upon the statements made in the applications; therefore, Sunrise is properly charged with the consequences of any misrepresentations in the applications. See TCF Mortgage Corp. v. Verex Assurance, Inc., 709 F.Supp. 164, 166 (D.Minn.1989) (construing an identical policy, the court held that because loan documents were submitted by the insured as required by Verex in order to receive insurance, misrepresentations contained therein were made by the insured or at least on the insured's behalf). St. Paul is not controlling because Sunrise was not merely faithfully reporting information supplied by a third party, but rather was required to furnish certain statements, including the borrowers' loan papers, as a part of its application upon which Verex expressly relied under the terms of the Policy. We hold that the misrepresentations made by the borrowers are properly imputed to Sunrise.
 
 B. Imputation to FDIC
 
 13
 FDIC claims that even if Sunrise is responsible for the misrepresentations contained in the loan documents, these false statements cannot be imputed to FDIC under established federal common law. Specifically, FDIC clings to the doctrine announced in D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) to support its assertion that the wrongful conduct committed by a failed federally insured financial institution cannot be imputed to FDIC when it is liquidating the assets of that institution. FDIC cites numerous cases interpreting D'Oench, Duhme to mean that the FDIC does not merely stand in the shoes of the failed institution, but instead can take greater rights to an asset of that institution. Among these cases is FDIC v. O'Melveny & Meyers, 969 F.2d 744 (9th Cir.1992), in which the Ninth Circuit explained that the equitable defense of imputation of knowledge does not apply to the FDIC acting as receiver.
 
 
 14
 FDIC's assertion of D'Oench, Duhme is fatally flawed, however, by FDIC's failure to raise this issue in the district court. By well settled convention, appellate courts generally will not consider an issue or theory that was not raised in the district court. Ford v. U.S., 989 F.2d 450, 453 (11th Cir.1993); see also United States v. Allegheny-Ludlum Industries, Inc., 517 F.2d 826, 840 n. 13 (5th Cir.1975); Brickner v. Voinovich, 977 F.2d 235, 238 (6th Cir.1992). FDIC seeks to avoid this rule by calling upon this Court's opinion in In re Daikin Miami Overseas, Inc., 868 F.2d 1201 (11th Cir.1989), which enumerated five exceptions to this general rule. According to Daikin, an appellate court may consider an issue presented for the first time when: the refusal to consider the pure question of law would result in a miscarriage of justice; the appellant had no opportunity to raise it below; there is at stake "a substantial interest of justice;" the proper resolution is beyond any doubt; or the issue presents significant questions of great public concern. Daikin, 868 F.2d at 1207.
 
 
 15
 FDIC urges this Court to entertain its D'Oench, Duhme argument because a pure question of law is at issue, the issue arose sua sponte from the district court's opinion, and the litigation is of national concern because it involves the mission of the FDIC. While FDIC correctly asserts that a pure question of law is involved and the issue is one of general impact, this issue did not arise sua sponte from the district court's opinion. FDIC quotes a portion of the district court's opinion that characterizes the resolution of this dispute as trying to determine who should bear the risk of loss between two "innocent parties," and argues that neither party addressed their rights under the district court's balancing test. After stipulating that neither Sunrise nor Verex knew about the borrowers' misrepresentations, FDIC cannot seriously contend that only after the district court's opinion did it realize that the case involved who must bear the loss between two innocent parties. Indeed, this entire case is predicated on the question of who should prevail after the unknown wrongdoing of the third party borrowers. The parties argued in their briefs before the district court that the borrowers' misrepresentations should not be imputed to Sunrise, and FDIC had ample opportunity to raise this same issue with regard to itself. Further, no substantial interest of justice is at stake, as these interests are "generally equated with the vindication of fundamental constitutional rights." Daikin, 868 F.2d at 107. Therefore, we decline to consider FDIC's late-breaking D'Oench, Duhme argument.
 
 C. Application of Fla.Stat. Sec. 627.409
 
 16
 The remaining question to be resolved is whether Fla.Stat. Sec. 627.409 applies to these certificates of insurance. As noted above Sec. 627.409 protects an insurer from material misrepresentations in an application for insurance, even those innocently made by the insured. Therefore, if Sec. 627.409 applies in this case, Verex can rescind the certificates it issued based on the material misrepresentations contained in the borrowers' loan documents which are imputed to Sunrise by virtue of our foregoing analysis. The question of whether Sec. 627.409 applied to mortgage guaranty insurance at the time these certificates were issued is an unresolved question of Florida law. We conclude this question is appropriate for certification to the Supreme Court of Florida and certify this question with accompanying memorandum at Appendix A.
 
 III. Conclusion
 
 17
 We AFFIRM the decision of the district court except for the question of Florida law which we certify to the Supreme Court of Florida for review and decision.
 
 APPENDIX A
 
 18
 CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA PURSUANT TO ARTICLE 5, SECTION 3(b)(6) OF THE FLORIDA CONSTITUTION.
 
 
 19
 TO THE SUPREME COURT OF FLORIDA AND ITS HONORABLE JUSTICES:
 
 
 20
 This case comes to the United States Court of Appeals for the Eleventh Circuit on appeal from the United States District Court for the Southern District of Florida. It involves a question of Florida law which is determinative of the cause, but unanswered by controlling precedent of the Supreme Court of Florida. We therefore certify this question for resolution by the highest court of Florida.
 
 
 21
 The question remaining in this appeal is whether Fla.Stat. Sec. 627.409 applies to these certificates of insurance. This section protects an insurer from material misrepresentations in an application for insurance, even those innocently made by the insured. Therefore, if Sec. 627.409 applies in this case, Verex can rescind the certificates it issued based on the material misrepresentations contained in the borrowers' loan documents which we find to be imputed to Sunrise.
 
 
 22
 The district court decided this question with some reluctance because it correctly identified the issue as an unresolved question of Florida law. The uncertainty arises from the Florida statutory scheme covering insurance. Since 1959, mortgage guaranty insurers, like Verex, have been governed by Florida Statutes Chapter 635, titled Mortgage Guaranty Insurance. Chapter 635 does not include a section, like Sec. 627.409, that protects mortgage guaranty insurers from material misrepresentations made by insureds. Nevertheless, the absence of an analog to Sec. 627.409 had little significance for years because courts extended the protection of Sec. 627.409 to mortgage guaranty insurers. See United Guarantee Residential Ins. Corp. v. American Pioneer Savings Bank, 655 F.Supp. 165 (S.D.Fla.1987); Continental Mortgage Insurance Inc. v. Empire Home Loans, Inc., No. 75-1099-CIV-JLK (S.D.Fla. Nov. 26, 1975).
 
 
 23
 On October 1, 1983, the landscape of Florida insurance statutes may have shifted. On that day, section 635.091, titled "Provisions of Florida insurance Code applicable to mortgage guaranty insurance," was added to Chapter 635 of the Florida Statutes. It provides as follows:
 
 
 24
 The following provisions of the Florida Insurance Code apply to mortgage guaranty insurers; chapter 624; chapter 625; parts I, II, VIII, and X of chapter 626; s. 627.915; chapter 628; and chapter 631.
 
 
 25
 Section 635.091 explicitly sets forth those parts of the Insurance Code applicable to mortgage guaranty insurers. Section 627.409 does not appear on the list of provisions expressly incorporated into Chapter 635.
 
 
 26
 In Home Guaranty Ins. Corp. v. Numerica Financial Services, Inc., 835 F.2d 1354 (11th Cir.1988), this Court held that Sec. 627.409 does not apply to mortgage guaranty insurance contracts formed after October 1, 1983, because Sec. 635.091 did not expressly incorporate Sec. 627.409. The parties agree that had the two insurance certificates been executed after October 1, 1983, Numerica would control and Verex would be required to bear the loss associated with the material misrepresentations.
 
 
 27
 The certificates of insurance involved in this case, however, were issued before the effective date of Sec. 635.091 on October 1, 1983. The issue of whether Sec. 627.409 applied to mortgage guaranty insurance before October 1, 1983 has not been directly considered subsequent to our decision in Numerica and the enactment of Sec. 635.091. Therefore, as the district court recognized, we are faced with a question of first impression: Did the Florida legislature enact Sec. 635.091 to clarify that Sec. 627.409 does not apply to mortgage guaranty insurance, or was Sec. 635.091 enacted to repeal, by implication, the application of Sec. 627.409 to mortgage guaranty insurance?
 
 
 28
 Lamenting its lack of authority to certify questions of Florida law to the Florida Supreme Court, the district court decided this novel question and concluded that Sec. 627.409 did apply to mortgage guaranty insurance prior to the enactment of Sec. 635.091. We agree with the district court that the resolution of this unsettled question of Florida state law is best handled by the Florida Supreme Court, and therefore we certify this issue to that Court. We set forth the following non-exhaustive review of the contentions of the parties which may assist the Florida Supreme Court in its consideration of this issue.
 
 
 29
 FDIC argues that the statutory scheme in place at the time Sec. 635.091 became effective indicates that the Florida legislature intended merely to clarify that Sec. 627.409 never applied to mortgage guaranty insurance, rather than work a substantive change through Sec. 635.091. To support its argument, FDIC points out that in 1983, Sec. 624.01 of the Florida Statutes defined the "Florida Insurance Code" as including Title XXXVII, Chapters 624 through 632 and Part I of Chapter 641. FDIC asserts that the absence of Chapter 635 from this list reinforces the fact that since the enactment of Chapter 635 in 1959, mortgage guaranty insurance has been governed exclusively by that chapter. Through the enactment of Chapter 635, FDIC alleges the Florida legislature made a conscious decision that mortgage guaranty insurance would be treated separately and differently from other insurance, except to the extent that the legislature chose to incorporate certain other provisions of the general insurance code.
 
 
 30
 According to FDIC, the Florida legislature effected this incorporation in Sec. 635.051[3] and Sec. 635.081[4]. FDIC asserts that these sections identified and incorporated those provisions of the Florida Insurance Code which the legislature made applicable to mortgage guaranty insurance, and no other provisions of the Florida Insurance Code were incorporated by reference into Chapter 635. FDIC contends that when the Florida legislature enacted Sec. 635.091, it did so to clarify by detailed statement of chapter and section those provisions of the insurance code previously applicable to mortgage guaranty insurers through subject matter description in sections 635.051 and 635.081.
 
 
 31
 FDIC also cites the legislative history surrounding the adoption of Sec. 635.091 to support its contention that this section was a technical amendment meant for clarification, not change. Specifically, FDIC relies on the Staff Summary and Analysis of Chapter 635, Fla.H.R.Comm. on Commerce, (Dec. 21, 1982) ("House Analysis") and the Staff Summary and Analysis of Chapter 635, Fla. Senate Comm. on Commerce, (Dec. 1982) ("Senate Analysis"). FDIC points to Section 13 of the House Analysis, which discussed the statute codified at Sec. 635.091. FDIC alleges that Section 13 reveals that Sec. 635.091 was only a technical amendment. It provides:
 
 
 32
 Section 13. A new section would clarify that certain provisions of the Insurance Code apply to mortgage guaranty insurers. This should be considered a technical amendment because casualty and surety insurers are currently subject to these parts of the code. House Analysis at p. 3.
 
 
 33
 This language means, according to FDIC, that enacting Sec. 635.091 was not a repeal, implied or otherwise, of the existing scheme, but rather the enactment was a clarification of the law as it existed. FDIC contends the Senate Analysis is consistent with the House Analysis, as reflected by the staff's last statement:
 
 
 34
 It is therefore recommended that the legislature reenact Chapter 635, Florida Statutes, with the following modifications;
 
 
 35
 Provide technical corrections and clarifying amendments to improve organization and understanding. Senate Analysis at p. 42.
 
 
 36
 In sum, FDIC argues that the legislative history supports its position that by enacting Sec. 635.091, no substantive change occurred in Florida law governing mortgage guaranty insurance policies.
 
 
 37
 Verex contends that the district court correctly determined that prior to the enactment of Sec. 635.091, Sec. 627.409 applied to mortgage guaranty insurance. Verex identifies several relevant provisions of the Florida Statutes to bolster its assertion. First, Verex notes that mortgage guaranty insurance is defined as a form of casualty and surety insurance in section 635.011, Fla.Stat. (1991), and avers that the scope of protection provided by Sec. 627.409 covers many types of insurance, including casualty and surety insurance. Specifically, section 627.401[5] defines the scope of Chapter 627, Part II, which contains Sec. 627.409, by excluding from its regulations certain types of insurance contracts. Noting the absence of mortgage guaranty insurance from this list of exclusions, Verex argues that finding that Sec. 627.409 did not apply to mortgage guaranty insurance prior to the enactment of Sec. 635.091 would effectively rewrite Sec. 627.401 to create a new exclusion for this type of insurance from the requirements imposed by Chapter 627, Part II.
 
 
 38
 Another provision of the Florida Statutes which Verex argues supports its position that mortgage guaranty insurance was subject to parts of the Florida Insurance Code beyond Chapter 635 is Sec. 627.4145. Enacted in 1982, Sec. 627.4145 required that every insurance policy written in Florida pass a readability test. In 1985, the Florida legislature amended Sec. 627.4145 to exempt mortgage guaranty insurance policies from the readability language requirements of the statute. Fla.Stat. Sec. 627.4145(6)(g) (1985). Verex points out that the Florida legislature must have known that Sec. 627.4148 is not listed among the Insurance Code provisions in Sec. 635.091 which were applicable to mortgage guaranty insurance. Therefore, Verex argues that if mortgage guaranty insurance was governed exclusively by the provisions of Chapter 635 and other specifically incorporated code provisions, the 1985 amendment to Sec. 627.4145 was pointless.
 
 
 39
 Similarly, Verex calls the Court's attention to Sec. 627.4133, governing notice of cancellation, nonrenewal, or renewal premiums. On October 1, 1990, the Florida legislature amended Sec. 627.4133 to exempt mortgage guaranty insurance from its coverage. Verex asserts that FDIC's position means that Sec. 627.4133 has not applied to mortgage guaranty insurance at least since 1983 when Sec. 635.091 was adopted because Sec. 635.091 does not list Sec. 627.4133. Nevertheless, because the legislature amended Sec. 627.4133 in 1990 specifically to exempt mortgage guaranty insurance, Verex insists that this statute must have applied to mortgage guaranty insurance prior to that time.
 
 
 40
 Verex maintains that the amendments to sections 627.4145 and 627.4133 indicate that FDIC's interpretation of the purpose and effect of Sec. 635.091 is untenable. If Sec. 635.091 were enacted only to clarify those sections of the Insurance Code applicable to mortgage guaranty insurance, then the amendments would have been without purpose. Thus, Verex argues that FDIC's explanation of Sec. 635.091 is incorrect.
 
 
 41
 Like FDIC, Verex turns to the legislative history to support its position that mortgage guaranty insurance is governed by provisions of the Florida Insurance Code, as well as by the requirements of Chapter 635. Verex alleges that the Florida legislature clearly stated that, by enacting Chapter 635, it only intended to impose "additional limitations on companies writing mortgage guaranty insurance in addition to the provisions of the Insurance Code, generally applicable to casualty and surety insurers." House Analysis at p. 2. Because Sec. 635.011 defines mortgage guaranty insurance as a form of casualty and surety insurance, Verex argues that mortgage guaranty insurance is subject to the requirements of more than just Chapter 635. Verex points to similar language in the Senate Analysis which requires mortgage guaranty insurance companies to comply with provisions of the Insurance Code. This legislative history shows that mortgage guaranty insurance is not governed exclusively by Chapter 635, Verex contends. Thus, Verex argues that the enactment of Sec. 635.091 in 1983 was an implied repeal of the application of Sec. 627.409 to mortgage guaranty insurance, according to this Court's opinion in Numerica, rather than a mere technical clarification of those provisions of the Insurance Code made applicable to mortgage guaranty insurance by incorporation into Chapter 635.
 
 
 42
 In sum, Verex disputes FDIC's contention that mortgage guaranty insurance is governed exclusively by Chapter 635. Instead, Verex argues that Chapter 635 provides the definitions and operational guidelines for mortgage guaranty insurers and their agents and imposes limitations on mortgage guaranty insurance in addition to the provisions of the Insurance Code applicable to casualty and surety insurers.
 
 
 43
 By this brief review of our understanding of the contentions of the parties, we do not mean to substitute our description of the arguments for the full statement of contentions by counsel. We merely recite these contentions to show that this question appears to be unresolved by Florida law, and thus, the issue is appropriate for certification to and resolution by the Supreme Court of Florida. We therefore certify the following question:
 
 
 44
 Did Fla.Stat. Sec. 627.409 apply to applications for and contracts of mortgage guaranty insurance prior to the enactment of Fla.Stat. Sec. 635.091 on October 1, 1983?
 
 
 45
 We do not intend the particular phrasing of the question to limit the Supreme Court of Florida in its consideration of the problems posed by the case. The Court is at liberty to consider the problems and issues involved in this case as it perceives them to be. To assist consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the Supreme Court of Florida.
 
 
 
 [1]
 Section 627.409 provides, in pertinent part, as follows:
 (1) All Statements and descriptions in any application for an insurance policy or annuity contract ... shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:
 (a) They are fraudulent;
 (b) They are material either to the acceptance of the risk or to the hazard assumed by the insurer; or
 (c) The insurer in good faith would either not have issued the policy or contract .. if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.
 
 
 [2]
 In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc), the United States Court of Appeals for the Eleventh Circuit held that the decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to October 1, 1981, shall be binding as precedent on all federal courts within the Eleventh Circuit
 
 
 [3]
 Fla.Stat. Sec. 635.051 (1981), titled "Licensing of mortgage guaranty insurance agents," provides:
 (1) Agents of mortgage guaranty insurers shall be licensed, and be subject to the same qualifications and requirements, as apply to general lines agents under the laws of this state, except:
 (a) That no particular preliminary specialized education or training shall be required of an applicant for such an agent's license if, as part of the application for license, the insurer guarantees that the applicant will receive the necessary training to enable him properly to hold himself out to the public as a mortgage guaranty insurance agent, and if the department, in its discretion, accepts such guaranty;
 (b) The agent's license shall be a limited license, limited to the handling of mortgage guaranty insurance only; and
 (c) An examination may be required of an applicant for such a license in the discretion of the department.
 (2) Any general lines agent shall qualify to represent a mortgage guaranty insurer without additional examination.
 (3) The department shall charge and collect the same applicable license taxes and fees for or in connection with such application and license as apply to general lines agents. The department shall deposit such license taxes and fees in such funds and for such uses as is provided by laws applicable to like license taxes and like fees in the case of general lines agents.
 
 
 [4]
 Fla.Stat. Sec. 635.081 (1981), titled Administration and Enforcement, states:
 The department shall have the same powers of administration and enforcement of the provisions of this act, and to make rules and regulations for the effectuation of any provisions of this act, as it has with respect to casualty or surety insurers in general under the insurance laws of this state.
 
 
 [5]
 Fla.Stat. Sec. 627.401 (1983), titled "Scope of this part," provides:
 No provision of this part of this Chapter applies to:
 (1) Reinsurance.
 (2) Policies or contracts not issued for delivery in this state nor delivered in this state, except as otherwise provided in this code.
 (3) Wet marine and transportation insurance, except Secs. 627.409, 627.420, and 627.428.
 (4) Title insurance, except Secs. 627.406, 627.416, 627.419, 627.427, and 627.428.
 (5) Credit life or credit disability insurance, except Secs. 627.419(5) and 627.428.