**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 25-11843

————————————————

WILLIAM T. QUINN,
DAVID CROSS,

*Plaintiffs-Appellants,*

*versus*

SECRETARY OF STATE FOR THE STATE OF GEORGIA,

*Defendant-Appellee.*

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:24-cv-04364-SCJ

————————————————

Before BRANCH, GRANT, and HULL, Circuit Judges.

BRANCH, Circuit Judge:

William T. Quinn and David Cross, two Georgia voters, sued the Georgia Secretary of State ("Secretary"), alleging that the state was violating federal voter list maintenance requirements

under the National Voter Registration Act of 1993, 52 U.S.C. § 20501 *et seq.* ("NVRA"), as well as related Georgia state laws. The district court dismissed the plaintiffs' suit for lack of Article III standing because their injuries were speculative and not particularized. On appeal, the plaintiffs contend that the district court erred because their discovery of allegedly improperly maintained state voter rolls "shook their faith in the electoral process" and "undermined [their] confidence" in Georgia's electoral process. The plaintiffs argue that their shaken confidence is particularized—they personally discovered the alleged discrepancies, after all—and non-speculative because their confidence "is actually and presently undermined." After careful review and with the benefit of oral argument, we affirm the dismissal because Quinn and Cross do not possess the particularized injury-in-fact that our standing doctrine requires.

## I.      Background

Quinn and Cross were concerned about the accuracy of Georgia's list of eligible voters and the related potential for ineligible voters to vote.[1]    They investigated this concern for

---

[1] In reviewing the district court's grant of a motion to dismiss for lack of subject matter jurisdiction, we accept as true all facts set forth in the plaintiff's complaint. *See Lord Abbett Mun. Income Fund, Inc. v. Tyson*, 671 F.3d 1203, 1206 (11th Cir. 2012). We relay the facts as stated in the complaint.

Notably, the plaintiffs do not allege that the Secretary improperly removed any voters from the list of eligible voters. Rather, the plaintiffs assert that the Secretary has left on the list voters who may have moved and thus are likely ineligible to vote.

themselves.  First, they obtained a list of voter registrations from the Secretary on June 30, 2024.  They then compared the names and addresses from that list to the United States Postal Service (USPS) National Change of Address database "to determine whether or not [the voter] still resided at their address of registration."  Their analysis compared only voters who had submitted a USPS Official Mail Forwarding Change of Address form and said that their change of address was "permanent."  In Quinn's and Cross's view, voters whose permanent addresses from the USPS database did not match the address on their voter registrations were likely ineligible to vote at the previous address. Thus, they "identified many voters who appear to have moved out of the jurisdiction in which they are registered."

On September 3, 2024, the plaintiffs sent a letter to the Secretary informing him that the state was "failing to comply with its obligations to perform voter list maintenance" under the NVRA. The letter made two requests: first, that the state notify the voters the plaintiffs had identified as ineligible to vote in Georgia of the challenge to the voters' eligibility; second, that the state change the registration of any voter who failed to respond to the notice from active to inactive before the November 2024 election.  The Secretary's office received the notice the next day but did not respond.

The plaintiffs sued the Secretary on September 26, 2024, asserting that their findings and the Secretary's inaction in response "undermined" their "confidence in the electoral process" and

risked diluting the impact of their own votes. They sought a declaratory judgment that the state had violated the NVRA and O.C.G.A. § 21-2-233,[2] both requiring voter registration list maintenance. They also sought a writ of mandamus or an injunction directing the Secretary to send the notices and move voters to inactive status as outlined in their letter to the Secretary. The Secretary moved to dismiss the complaint on October 21, 2024, arguing in part that the challenge was untimely because the election was only 15 days away. In response, Quinn and Cross filed an amended complaint that no longer sought relief before the November 2024 election.

The amended complaint included the same and similar additional allegations. In addition to the allegations in their original complaint, Quinn and Cross alleged that they had since obtained more voter registration data on October 1, 2024, and compared that data against the USPS database. According to their analysis, "numerous voters contained in the June 2024 data [were] still listed as active in the more recent October data." Their amended complaint provided examples from their fresh analysis and how they believed it revealed voters had "permanently moved out of state" but remained listed as active voters. Quinn and Cross

---

[2] This code section provides that "[t]he Secretary of State is authorized to cause at his or her discretion the official list of electors to be compared to the change of address information supplied by the United States Postal Service through its licensees periodically for the purpose of identifying those electors whose addresses have changed." O.C.G.A. § 21-2-233(a).

alleged that this data showed that the Secretary had "not made a reasonable effort to maintain Georgia's voter rolls" in violation of both the NVRA and Georgia law. They continued to assert that the Secretary's inaction undermined their confidence in Georgia's elections and risked vote dilution. As relief, they sought a declaratory judgment that the Secretary had violated and continued to violate the NVRA and Georgia law, and an injunction directing the Secretary to investigate the alleged discrepancies, notify the alleged ineligible voters, and render inactive the registration of any voters who failed to timely respond to the notice.

The Secretary moved to dismiss the amended complaint, arguing that the plaintiffs lacked standing and failed to state a claim upon which the court could grant relief. The district court agreed with the Secretary and dismissed the complaint for lack of standing. The district court found (1) that Quinn's and Cross's alleged injuries were not particularized and (2) that, even if particularized, the alleged injuries were speculative.

More specifically, the district court concluded that the plaintiffs' claims of undermined confidence and vote dilution were generalized grievances that were "undifferentiated and common to all members of the public." As such, the court held that such injuries could not be particularized under this Court's decision in *Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020). The district court then focused on Quinn's and Cross's allegations that "thousands of voter registrations [were] apparently incorrect" and

that the rolls "may include voters who relocated" which created "a possibility of harm" to the plaintiffs. It found that any injury from these alleged inaccuracies was speculative at best, as they showed only that Quinn and Cross were "at risk to lose confidence in election results or somehow dilute their votes regardless of what county they live in."

Quinn and Cross timely appealed. Although below the plaintiffs brought both state and federal claims, on appeal they focus solely on their federal claim alleging violations of the NVRA.

## II.    Discussion

Quinn and Cross argue on appeal that the district court erred in finding that their undermined confidence in Georgia's elections was not a particularized injury for purposes of Article III standing.[3] First, they contend that their undermined confidence is a

---

[3] Quinn and Cross also argue that the district court made "a series of mistakes" in combining its injury-in-fact analysis of undermined confidence and vote dilution, which they contend are "distinct injuries with different factual and legal considerations." But they contend that they need not establish a vote dilution claim for standing if undermined confidence would suffice. They thus affirmatively chose to "focus[] solely on undermined confidence" in their appeal. "A party fails to adequately brief a claim when he does not plainly and prominently raise it, for instance by devoting a discrete section of his argument to those claims." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (quotation omitted). And failure to do so means a party has abandoned the issue, even if the party mentions it in passing. *Id.* So despite Quinn's and Cross's protestations to the contrary in their reply brief, they abandoned vote dilution as a standing ground when they chose to focus on undermined confidence in their initial brief on appeal. *See id.* We therefore confine our analysis to the undermined confidence claim.

particularized injury because the analysis they conducted (and their subsequent outreach to the Secretary who did not respond to them) means that they have "unique knowledge and experience with the state different from any other member of the public." They also contend that whether undermined confidence is a sufficient injury for Article III standing is a matter of first impression in this Circuit and that other (out-of-circuit, district) courts' decisions conferring standing in similar circumstances should persuade this Court.   Second, they argue that their undermined confidence is "present and actual rather than speculative."[4]

We review *de novo* dismissal of a complaint for lack of standing.  *See Freeman v. First Union Nat'l*, 329 F.3d 1231, 1234 (11th Cir. 2003).  Questions of standing to sue are jurisdictional.  *See Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019).

Federal courts are courts of limited jurisdiction.  The Constitution limits our authority to actual "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  To ensure that we remain within our constitutional bounds, plaintiffs must establish that they have standing to bring their case.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (*en banc*).  Standing requires three

---

[4] Because we find that Quinn and Cross do not state a particularized injury sufficient to establish standing, we need not address whether the injury is also concrete.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (holding that an "injury in fact" must be both concrete *and* particularized).

elements: (1) "the plaintiff must have suffered an injury in fact"; (2) "the injury has to be fairly traceable to the challenged action of the defendant"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (alteration adopted) (quotation omitted); *see Muransky*, 979 F.3d at 924.

Injuries "in fact" must be "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotations omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quotations omitted). "[G]eneral interest[s] common to all members of the public" are not particularized injuries. *Lujan*, 504 U.S. at 575. And mere "expression[s] of a desire that the [law] as written be obeyed" do not support an injury-in-fact. *Diamond v. Charles*, 476 U.S. 54, 66 (1986).

"At the pleading stage of a case, general factual allegations of injury can suffice [to show an injury]. But that [principle] is not a free pass—these general factual allegations must plausibly and clearly allege a concrete injury." *Muransky*, 979 F.3d at 924 (citation and quotation omitted). Consequently, Quinn and Cross must still plausibly allege that the NVRA violation they complain of

aggrieves them with a concrete and particularized injury that satisfies our standing doctrine. *See* 52 U.S.C. § 20510(b).[5][6]

Quinn and Cross argue that their undermined confidence is a particularized injury because the analysis they conducted (and their subsequent outreach to the Secretary) means they "have unique knowledge and experience with the state different from any other member of the public." This argument misunderstands our standing doctrine.

For Quinn and Cross to state a particularized injury, the injury must be one that does not equally affect all Georgians; the claimed injury here does. *See Wood*, 981 F.3d at 1314. Although the plaintiffs attempt to describe a personal, emotional injury, at core their claim is that they are upset by Georgia's alleged failure to comply with its obligations under the NVRA. But *any* voter could claim equally undermined confidence based on the Secretary's alleged failure to properly maintain voter rolls—*i.e.*, the failure to obey federal law. And just because the plaintiffs

---

[5] The NVRA says that a "person who is aggrieved by a violation [of the NVRA] may . . . bring a civil action . . . for declaratory or injunctive relief." 52 U.S.C. § 20510(b)(1)–(2). But Congress creating a private right of action does not mean that Quinn and Cross automatically have an injury-in-fact. *See Spokeo*, 578 U.S. at 341.

[6] Quinn and Cross note that we have analyzed the merits of similar claims alleging violations of the NVRA's voter roll maintenance requirement in the past. *See Bellitto v. Snipes*, 935 F.3d 1192, 1200 (11th Cir. 2019). But *Bellitto* did not analyze whether the plaintiffs had standing and thus does not apply to the threshold jurisdictional question before us.

happened to personally discover this purported failure through their own initiative does not uproot this supposed injury from the category of the general and plant it in the particular.

Taken to the extreme under Quinn's and Cross's knowledge theory, any voter who discovered (or thought they discovered) government impropriety, whether through their own research or by reading a news article or a post on X, could have standing to sue based on their "unique knowledge and experience." Discovering potential government error by itself does not grant standing to sue. *See Lujan*, 504 U.S. at 575. That the government error concerns important issues such as voting and elections does not change our requirement to evaluate standing. *See Lewis*, 944 F.3d at 1296 (explaining that standing is a jurisdictional question). At bottom, Quinn's and Cross's undermined confidence stems from an interest in ensuring that Georgia obey federal law requiring it to follow processes that ensure that only lawful ballots are counted. We rejected that sort of generalized grievance as a basis for standing in *Wood*. *See* 981 F.3d at 1314 (holding that an "interest in ensuring that only lawful ballots are counted" is a generalized grievance and not a particularized injury (alterations adopted) (quotations omitted)). And without facts indicating why the Secretary's alleged failure affects them personally, beyond their equal stake in their state government's obedience to federal law, Quinn and Cross cannot show they have more than a general interest that is common to all members of the public. *Lujan*, 504 U.S. at 575.

Quinn and Cross also argue that the district court improperly applied *Wood* because that case involved vote dilution, not undermined confidence, and did not concern NVRA violations. *See Wood*, 981 F.3d at 1312, 1314–15. We agree that *Wood* did not discuss undermined confidence directly. But the undermined confidence claim here shares the same factual basis as the vote dilution claim in *Wood*. Both depend on a shared desire of all residents of every state: a generalized desire that the state follow the law (here, removing ineligible persons from voting rolls). *See Diamond*, 476 U.S. at 66 (explaining that "expression[s] of a desire that the [law] as written be obeyed" do not support an injury-in-fact). And to the extent their concern reflects a desire that the state count only lawful votes, *Wood* forecloses that argument as a basis for standing. *See Wood*, 981 F.3d at 1314. In short, as was the case in *Wood*, the plaintiffs' claims here are too generalized to provide standing.[7]

---

[7] Quinn and Cross also argue on appeal that the Secretary's failure to respond to their notice "closed the door to [their] genuine attempt to participate in the statutorily-sanctioned political process, making meaningless their right to submit plausible notices of NVRA violations, for the state to correct the errors." But the plaintiffs did not raise this issue before the district court, and they cannot make such arguments now after failing to do so below, so we decline to address them. *See FDIC v. Verex Assurance, Inc.*, 3 F.3d 391, 395 (11th Cir. 1993) (explaining that "appellate courts generally will not consider an issue or theory that was not raised in the district court").

### III.    Conclusion

Quinn and Cross failed to allege a particularized injury. Thus, they lack standing to bring this suit.

**AFFIRMED.**