32 F.3d 1521
 30 Fed.R.Serv.3d 760, 9 IER Cases 1709
 James H. NAREY, Plaintiff-Appellee,
v.
Darrell DEAN, Individually and in his official capacity as
Georgia Department of Human Resources, District
One, District Medical Director, et al.,
Defendants-Appellants.
 No. 93-8566.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 26, 1994.
 
 William C. Joy, Carol Atha Cosgrove, Ronald R. Womack, Sp. Asst. Atty. Gen., LaFayette, GA, for appellants.
 John W. Davis, Jr., Gleason & Davis, David James Dunn, Rossville, GA, Benjamin Peter Erlitz, Atlanta, GA, for appellee.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before BIRCH and CARNES, Circuit Judges, and BLACKBURN*, District Judge.
 CARNES, Circuit Judge:
 
 
 1
 Georgia state officials Dean, Gates, and Moss appeal from a district court judgment based on a jury verdict and damages award against them in this Sec. 1983 suit. In light of McKinney v. Pate, 20 F.3d 1550 (11th Cir.1994) (en banc), we reverse.
 
 I. BACKGROUND
 
 2
 James Narey was the director of the Northwest Georgia Community Mental Health Center in Fort Oglethorpe. As a tenured state employee, he had a property interest in his job. Narey's supervisor was Darrell Dean, the District Health Officer. In January 1988, after an audit revealed questionable financial practices by the Center, Dean asked his supervisor, John Gates of the State Division of Mental Health and Mental Retardation, for an investigation. Gates forwarded the request to the Department of Human Resources's Office of Fraud and Abuse, which assigned James Moss to the task. Dean suspended Narey, with pay, during the pendency of the investigation.
 
 
 3
 After the investigation was concluded, Dean requested that Narey be terminated, citing numerous problems with his management of the Center, including improper handling of client funds, failure to maintain a computerized drug inventory, misuse of state grant-in-aid funds, and failure to obtain approval prior to entering a lease. Narey asked Gates to conduct a pre-termination review. Gates agreed that Narey's performance was problematic, but instead of firing him, Gates demoted him, cut his pay, and assigned him to work as a counselor in the same health center that he had formerly directed.
 
 
 4
 After his demotion, Narey appealed to the State Personnel Board. After a seven-day, quasi-judicial hearing on the matter, the hearing officer upheld Gates's decision. Narey appealed to the full Board, which affirmed. Narey then filed an appeal with the Catoosa County Superior Court, which he later voluntarily dismissed without prejudice.
 
 
 5
 Narey then filed this Sec. 1983 suit in federal district court, alleging that the defendants had concocted "trivial, technical, minute and inconsequential" charges against him in order to remove him from his position in violation of his rights under the Fifth and Fourteenth Amendments of the United States Constitution. He asserted three due process claims: that the defendants had demoted him for pretextual reasons, that they had failed to satisfy the requirements of progressive discipline before demoting him, and that they were without legal authority to take the adverse action against him. Narey also asserted a state law claim for tortious interference with his contractual rights, which he abandoned before trial. The district court granted judgment as a matter of law for the defendants on Narey's claim that the defendants lacked the authority to demote him. The remaining two due process claims went to the jury, which returned a verdict for Narey, and awarded him $400,000 in compensatory damages; the jury also awarded Narey $550,000 in punitive damages against Dean, $550,000 in punitive damages against Gates, and $250,000 in punitive damages against Moss. The court entered a judgment based on the jury's verdict on December 28, 1992. The defendants brought this appeal.
 
 II. ISSUES
 
 6
 On appeal, the defendants argue that, under the Rooker- Feldman and res judicata doctrines, the decision of the State Personnel Board upholding Narey's demotion barred the district court from hearing Narey's case. Alternatively, the defendants argue that the district court erred in allowing Narey to proceed with a substantive due process claim for pretextual demotion. Narey argues that, because the defendant's notice of appeal was defective, we do not have jurisdiction over this appeal. We will first address the threshold jurisdictional issues concerning the notice of appeal and the Rooker- Feldman doctrine, and then discuss the defendants' other contentions.
 
 
 7
 A. THIS COURT'S JURISDICTION OVER THE APPEAL
 
 
 8
 Narey contends that the defendants' notice of appeal was untimely because it was filed before the judgment became final, and that we therefore have no jurisdiction over this appeal. We disagree.
 
 
 9
 The district court's December 28, 1992 judgment did not mention reinstatement, although the court had previously announced its intention to award Narey that relief. On January 7, 1993, Narey moved for entry of an order of reinstatement to his former position. The defendants then moved for judgment as a matter of law or for a new trial. On April 22, 1993, the defendants' motion was denied. On April 30, while Narey's motion for reinstatement was still pending, the defendants filed their notice of appeal. On May 4, the district court issued an order stating that Narey would be reinstated, but that the entire judgment would be stayed until the disposition of the appeal.
 
 
 10
 Narey then moved the district court to dismiss the appeal, arguing that the judgment did not become final until that court's May 4 ruling on Narey's motion for reinstatement--four days after the notice of appeal was filed. At that time, Fed.R.App.P. 4(a)(4) provided that a notice of appeal filed before the disposition of a motion to alter or amend the judgment has no effect. Narey argued to the district court that his motion to amend the judgment to include reinstatement therefore made the defendants' notice of appeal ineffective. The defendants countered by moving the district court to retroactively certify for appeal its April 22 order denying their motion for a new trial or judgment as a matter of law. In response, the district court concluded that it had granted reinstatement previously, although not in writing. The court therefore concluded that the April 22 order was the final decision in the case, and the May 4 order was merely a collateral ruling on when reinstatement was to occur (i.e., not during the appeal). A motions panel of this Court accepted the district court's interpretation of the events and its characterization of the May 4, 1993 order as "wholly collateral to the judgment," and denied Narey's motion to dismiss the appeal for lack of jurisdiction.
 
 
 11
 Observing that Eleventh Circuit Rule 27-1(f) gives the merits panel the power to overturn the motions panel's decision, Narey now renews his argument that we lack jurisdiction over this appeal. Narey argues that if the district court had not entered the May 4, 1993 order, the judgment would have become final after ten days, and the issue of his reinstatement would have been waived. He therefore reasons that the order did alter or amend the judgment by granting him a form of relief he otherwise would have lost. Because of a recent amendment to Fed.R.Civ.P. 4, we need not decide whether Narey's characterization of the May 4, 1993 order, or that of the district court, is correct.
 
 
 12
 Until December 1, 1993, Rule 4 provided that the filing of a Rule 59 motion to alter or amend a judgment voided any notice of appeal filed before the disposition of the motion. However, under the version of Rule 4(a)(4) that took effect on December 1, 1993, an otherwise timely notice of appeal filed before the disposition of a Rule 59 motion is not voided but instead merely lies dormant while the motion is pending, and the notice of appeal becomes effective as of the date of the order disposing of the Rule 59 motion.
 
 
 13
 We applied the new Rule 4(a)(4) retroactively in Virgo v. Rivera Beach Assocs., Ltd., 30 F.3d 1350 (11th Cir.1994). In that decision, we noted that the Supreme Court's order adopting the new Rule 4(a)(4) provided that it was to apply to all cases then pending " 'insofar as just and practicable.' " Id., 30 F.3d at 1355 n. 3 (quoting Burt v. Ware, 14 F.3d 256, 258 (5th Cir.1994)). The only limitation on the Supreme Court's power to apply procedural rules retroactively is contained in 28 U.S.C. Sec. 2074, which prohibits retroactive application where "the application of such rule ... would work injustice." In Burt v. Ware, the Fifth Circuit concluded that it is not an injustice for a party to lose the "windfall" of having an appeal dismissed because of a loophole in the procedural rules, 14 F.3d at 260, and our decision in Virgo essentially adopted that position.
 
 
 14
 Because the new Rule 4(a)(4) is to be applied retroactively, it does not matter whether Narey's motion was a Rule 59 motion to alter or amend the judgment. Even if it were, the defendants' notice of appeal became effective May 4, 1993--the date the district court disposed of the motion. We would therefore still have jurisdiction over this appeal. Accordingly, we reject Narey's argument that we lack jurisdiction.
 
 B. THE ROOKER-FELDMAN ISSUE
 
 15
 The defendants argue that under the Rooker- Feldman doctrine, the decision of the State Personnel Board deprived the district court of subject-matter jurisdiction over Narey's lawsuit, a contention we review de novo. Latin Am. Property & Casualty Ins. Co. v. Hi-Lift Marina, Inc., 887 F.2d 1477, 1479 (11th Cir.1989).
 
 
 16
 The Rooker- Feldman line of cases has been described as the "jurisdictional transmutation of res judicata doctrine." 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure Sec. 4469 (1981). The essence of the Rooker- Feldman doctrine is that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings. Review of such judgments may be had only in [the United States Supreme Court]." District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 103 S.Ct. 1303, 1315, 75 L.Ed.2d 206 (1983). The Rooker- Feldman and res judicata doctrines, although related, are distinct:
 
 
 17
 The Rooker- Feldman doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.
 
 
 18
 GASH Assocs. v. Village of Rosemont, 995 F.2d 726, 728 (7th Cir.1993). Federal district courts are without jurisdiction to "decide federal issues that are 'inextricably intertwined' with a state court's judgment." Liedel v. Juvenile Court of Madison County, 891 F.2d 1542, 1545 (11th Cir.1990) (quoting Feldman, 460 U.S. at 482 n. 16, 103 S.Ct. at 1315 n. 16).
 
 
 19
 Contrary to the defendants' position, the Rooker- Feldman doctrine, unlike that of res judicata, applies only to state court decisions, not to state administrative decisions. Ivy Club v. Edwards, 943 F.2d 270, 284 (3d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1282, 117 L.Ed.2d 507 (1992); see Feldman, 460 U.S. at 482, 103 S.Ct. at 1315 (holding that district courts have no jurisdiction "to review final judgments of a state court in judicial proceedings" (emphasis added)). If the decision of a state agency has been upheld by a state court, then the Rooker- Feldman doctrine applies, because a challenge to the agency's decision necessarily involves a challenge to the judgment of the state court. See Staley v. Ledbetter, 837 F.2d 1016 (11th Cir.1988) (holding that a district court lacked jurisdiction to review a decision of a county agency, where that decision had been upheld by the state court of appeals). The "effect of unreviewed state administrative decisions," however, is a matter of res judicata, and is governed by the Supreme Court's decision in University of Tennessee v. Elliott, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). Ivy Club, 943 F.2d at 284 (emphasis added).
 
 
 20
 The defendants correctly note that the Rooker- Feldman doctrine has been applied to state bar proceedings. See, e.g., Thomas v. Kadish, 748 F.2d 276 (5th Cir.1984), cert. denied, 473 U.S. 907, 105 S.Ct. 3531, 87 L.Ed.2d 655 (1985). They argue that the doctrine should be applied to any state administrative proceeding that is judicial in nature. However, the rationale for applying Rooker- Feldman to the decision of a board of bar examiners is not that such a board functions like a court; it is that "the Board was essentially the agent of the [state] Supreme Court." Scott v. Flowers, 910 F.2d 201, 207 (5th Cir.1990) (emphasis added).
 
 
 21
 Scott illustrates the point. In that case, a member of the Texas Commission on Judicial Conduct attempted to invoke the protection of the Rooker- Feldman doctrine to shield a Commission decision from judicial review. The Fifth Circuit refused to apply the doctrine, because "[d]espite the judicial nature of its actions ... the Commission cannot be regarded as the agent of the state court system. Unlike the Board [of Bar Examiners], the Commission is constitutionally established and is endowed with a measure of independence from the courts." 910 F.2d at 208. The same is true of the Georgia State Personnel Board in this case, which is not the agent of the state courts. See Ga. Const. of 1983, Art. 4, Sec. 3, p 1 (establishing the State Personnel Board and providing for gubernatorial appointment of Board members). The rationale for extending Rooker- Feldman to cover the decisions of boards of bar examiners is therefore inapposite.
 
 
 22
 Any extension of the Rooker- Feldman doctrine to state administrative agency decisions would be inconsistent with the Supreme Court's disposition of University of Tennessee v. Elliott. In that case, the University of Tennessee had informed Elliott that he would be fired from his position. 478 U.S. at 790, 106 S.Ct. at 3222. Elliott challenged the termination in a state administrative proceeding, arguing that the decision to dismiss him was racially motivated. Id. at 791, 106 S.Ct. at 3222. The state administrative law judge found that the charges made against Elliott were not racially motivated, but that he should be transferred rather than fired. Id. There was no state court proceeding. Elliott brought a lawsuit in federal court, alleging that the job action was racially discriminatory and asserting claims under Title VII and Sec. 1983. Rooker- Feldman is a jurisdictional doctrine. Therefore, if Rooker- Feldman applied to state administrative adjudications, the Supreme Court, which created the doctrine, would have raised the issue on its own motion and thrown out Elliott's claims. See Liberty Mutual Ins. Co. v. Wetzel, 424 U.S. 737, 740, 96 S.Ct. 1202, 1204, 47 L.Ed.2d 435 (1976) (observing that the Supreme Court must question the jurisdiction of the lower courts on its own motion). However, the Supreme Court did not dismiss for want of subject matter jurisdiction. Instead, it held that Title VII plaintiffs are entitled to a trial de novo following a state administrative proceeding. The Court also held that if a state agency, " 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' " its findings of fact would be given preclusive effect in a subsequent Sec. 1983 action. 478 U.S. at 797-98, 106 S.Ct. at 3225-26 (quoting United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)). Elliott establishes that, contrary to the defendants' position, federal courts do have jurisdiction to entertain challenges to unreviewed state administrative agency decisions.
 
 
 23
 We therefore hold that the Rooker- Feldman doctrine does not apply to the unreviewed decision of the Personnel Board. Because, as we discuss in the next section, Narey's due process claim for pretextual demotion must fail on the merits, we need not determine whether his claim is barred by res judicata --that is, whether the Personnel Board's findings on pretext are entitled to preclusive effect. That is a non-jurisdictional question, the answer to which will not affect the result of this appeal.
 
 C. THE EFFECT OF McKINNEY v. PATE
 
 24
 The defendants argue that the district court erred in allowing Narey's pretext claim to go to the jury, because "the Plaintiff is attempting to state a substantive due process claim," and prior Supreme Court precedent "compel[s] a holding by this Court that a deprivation of Plaintiff's state-created property interest in continued employment, without more, does not state a substantive due process violation." After oral argument in this appeal, this Court issued its opinion in McKinney v. Pate, 20 F.3d 1550 (11th Cir.1994) (en banc), which vindicates the defendants' position.
 
 
 25
 Prior to our decision in McKinney, the law in this Circuit was that " '[a] violation of a public employee's right to substantive due process occurs when an employer deprives the employee of a property interest for an improper motive and by means that [are] pretextual, arbitrary and capricious, regardless of whether or not a hearing was held.' " McKinney, 20 F.3d at 1558-59 (quoting Nolin v. Douglas County, 903 F.2d 1546, 1553-54 (11th Cir.1990)). In McKinney, we overruled the line of cases establishing that law, and held that an allegation of pretextual firing implicates only procedural due process concerns, and does not state a substantive due process claim. Id. at 1564-65.
 
 
 26
 Narey argues that the defendants waived this issue, because their argument was presented to the district court for the first time in a post-trial motion for judgment as a matter of law, instead of at trial. See Fed.R.Civ.P. 12(h)(2). In essence, Narey argues that the defendants are in the same position as if they had never raised the issue in the district court. It is true that "appellate courts generally will not consider an issue or theory that was not raised in the district court." FDIC v. Verex Assurance, Inc., 3 F.3d 391, 395 (11th Cir.1993). However, this Court has identified five exceptions to that rule:
 
 
 27
 First, an appellate court will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice. Second, the rule may be relaxed where the appellant raises an objection to an order which he had no opportunity to raise at the district court level. Third, the rule does not bar consideration by the appellate court in the first instance where the interest of substantial justice is at stake. Fourth, a federal appellate court is justified in resolving an issue not passed on below ... where the proper resolution is beyond any doubt. Finally, it may be appropriate to consider an issue first raised on appeal if that issue presents significant questions of general impact or of great public concern.
 
 
 28
 Dean Witter Reynolds, Inc. v. Fernandez, 741 F.2d 355, 360-61 (11th Cir.1984) (footnotes and citations omitted); see also In re Daikin Miami Overseas, Inc., 868 F.2d 1201, 1207 (11th Cir.1989). At the least, the proper resolution of this issue is now beyond any doubt. We therefore choose to exercise our discretion to consider this issue. See United States v. Southern Fabricating Co., 764 F.2d 780, 781 (11th Cir.1985) (observing that "[t]he decision whether to consider" an argument raised for the first time on appeal "is left to the appellate court's discretion").
 
 
 29
 Under McKinney, a pretextual adverse job action claim implicates only procedural, not substantive, due process protection. 20 F.3d at 1561; see also Cummings v. DeKalb County, 24 F.3d 1349, 1354 (11th Cir.1994) (holding that a substantive due process claim for pretextual deprivation of employment is precluded by McKinney ). The Due Process Clause entitles an employee who alleges that the reasons given for the deprivation of a property interest are pretextual to receive adequate procedural protection both before and after the deprivation. Id. at 1565.
 
 
 30
 Prior to an adverse job action, a public employee with a property interest in his job " 'is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.' " Id. at 1561 (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985)). As we stated in McKinney, the pre-termination "hearing is not a mini-trial and 'need not definitely resolve the propriety of the discharge. It should be an initial check against mistaken decisions--essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.' " Id. at 1561 (quoting Loudermill, 470 U.S. at 545-46, 105 S.Ct. at 1495). It is undisputed that Narey was given a list of the charges against him prior to the pre-termination hearing conducted by Dr. Gates, along with a lengthy discussion of the evidence. It is also undisputed that he had an opportunity to tell Dr. Gates his side of the story. Narey therefore received a pre-termination hearing with "all the process due under Loudermill." Id. at 1562.
 
 
 31
 Narey argues, however, that Gates, the decisionmaker, acted in concert with Dean and Moss in demoting him for pretextual reasons--that the decisionmaker at his pre-termination hearing was biased. Where such bias is alleged, it is "only the state's refusal to provide a means to correct any error resulting from the bias [that] would engender a procedural due process violation." McKinney, 20 F.3d at 1563. The question, therefore, is whether the state provided Narey with the means to present his allegations, to demonstrate that his demotion was pretextual, and to receive redress from that biased decision. Id. at 1562. In McKinney, we held that the review available in the Florida courts, which have the power to review employment termination cases for due process violations, "more than satisfies" that requirement. Id. at 1563. The Georgia Code provides for the same sort of review in Georgia state courts; decisions of the State Personnel Board may be appealed to the superior court of the county of the place of employment, and "[t]he court may reverse the decision or order of the board if substantial rights of the petitioner have been prejudiced because the board's findings, inferences, conclusions, decisions, or orders are ... [i]n violation of constitutional or statutory provisions." O.C.G.A. Sec. 45-20-9(m) (1990); see also State Personnel Bd. v. Morton, 198 Ga.App. 845, 403 S.E.2d 455, 458 (1991) (reversing a State Personnel Board decision for failure to give employee due process). Not only did the state allow Narey an appeal to the State Personnel Board; it also allowed an appeal to state courts to review the decision of the Board for constitutional violations. Furthermore, the post-deprivation remedies available under Georgia law are adequate; the State Personnel Board, and the state courts upon reviewing the Board's decision, have the power to grant reinstatement and to compensate employees for back wages and other lost benefits. See Department of Corrections v. Colbert, 202 Ga.App. 27, 413 S.E.2d 498, 500 (1991) (discussing procedure for presenting claim for back pay and other benefits); Georgia Dept. of Labor v. Sims, 164 Ga.App. 856, 298 S.E.2d 562, 563 (1982) (awarding reinstatement and back pay to terminated employee). Narey, like McKinney, did not take advantage of the opportunity for state court review, and cannot now claim that the state deprived him of procedural due process.[1]
 
 D. THE JURY VERDICT
 
 32
 Narey's claim for pretextual demotion should not have gone to the jury. The defendants have not, however, challenged the propriety of the district court's submitting to the jury Narey's progressive discipline claim. However, "[w]hen the jury delivers a verdict based upon several possible grounds, one of which ... was improperly submitted to the jury, and the appellate court has no means of determining on what basis the jury reached its verdict, the verdict must be reversed and remanded." Grant v. Preferred Research, Inc., 885 F.2d 795, 800 (11th Cir.1989). Narey does not suggest that the progressive discipline claim can support the jury's damage award; he concedes that the case must be remanded if the issue of pretext was erroneously submitted to the jury. We therefore reverse the judgment, and remand the case to the district court for further consideration of the progressive discipline claim. We leave it to the district court, in the first instance, to decide all aspects of that claim and any asserted defenses, in light of McKinney and our decision in this case, and to determine whether to provide Narey a new trial on that claim or to enter judgment on it for the defendants.
 
 III. CONCLUSION
 
 33
 The judgment in favor of the plaintiff is REVERSED, and the case is REMANDED.
 
 
 
 *
 Honorable Sharon Lovelace Blackburn, U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 The defendants' argument that the district court erred in denying them qualified immunity on the pretextual demotion claim is now moot, because we have disposed of that claim on the merits
 The defendants also contend that the district court erred in charging the jury on conspiracy, arguing that Narey failed to allege the existence of a conspiracy in his complaint and that there was no evidence of a conspiracy at trial. Neither of these contentions is supported by the record. The allegations in the complaint are sufficient to make out a claim of conspiracy, and the existence of a conspiracy could be inferred from the evidence at trial.
 Finally, the defendants challenge the district court's refusal to allow them to impeach Narey by introducing extrinsic evidence to contradict his version of the events that led to an EEOC investigation into charges that Narey had sexually harassed his employees. Not only was the entire subject of marginal relevance to the issues being tried, but the defendants attempted to contradict Narey with hearsay statements attributed to his coworkers by an EEOC report. The district court did not abuse its discretion by refusing to allow impeachment on a collateral matter with inadmissible evidence. See Fed.R.Evid. 801, 802; United States v. Sheffield, 992 F.2d 1164, 1167 (11th Cir.1993) (holding that district court decisions regarding the admissibility of evidence to attack the credibility of a witness are reviewed for abuse of discretion); United States v. Russell, 717 F.2d 518, 520 (11th Cir.1983) (discussing the rule against contradiction on collateral matters).