United States Court of Appeals,

Eleventh Circuit.

No. 93-8791.

Alicia CABAN-WHEELER, Plaintiff-Appellee-Cross-Appellant,

v.

William ELSEA, M.D., Fulton County Health Department, et al.,
Fulton County Personnel Board, Dr. Robert H. Brisbane, Ellinor Dye;
Herbert Mabry and Charles Cherry, Defendants-Appellants-Cross-
Appellees.

Jan. 4, 1996.

Appeals from the United States District Court for the Northern
District of Georgia. (No. 1:86-CV-1919-HTW), Horace T. Ward, Judge.

Before EDMONDSON and COX, Circuit Judges, and FAY, Senior Circuit
Judge.

FAY, Senior Circuit Judge:

This appeal arises from a jury verdict in favor of the
plaintiff under 42 U.S.C. § 1983. The cross-appeal arises from a
verdict for the defendants after a bench trial on a claim for
relief under Title VII of the Equal Employment Opportunity Act, 42
U.S.C. Sec. 2000e et. seq. The plaintiff also cross-appeals the
amount the District Court awarded for attorney's fees under the
successful § 1983 claim. We AFFIRM the District Court's rulings on
both claims, and REVERSE and REMAND only for a recalculation of
attorney's fees.

I. BACKGROUND

Dr. Caban-Wheeler, a White Hispanic female, was fired by the
Fulton County Health Department. She then brought a civil rights
action against various Fulton County departments and employees
based on national origin or race discrimination, and violation of
her due process rights. The District Court ruled for the

defendants on all claims, and Ms. Caban-Wheeler appealed.  This Court reversed and remanded, holding that the "numerous suspicious discriminatory circumstances in this case demand a retrial and re-examination of all issues."  *Caban-Wheeler v. Elsea,* 904 F.2d 1549, 1558 (11th Cir.1990).  On remand, the § 1983 claim was tried to a jury, and afterward the Title VII claim was tried by the court.  The jury found for Caban-Wheeler on her procedural due process claim, and awarded $100,000 in punitive damages.  The jury awarded no compensatory or nominal damages, but the court later ordered that one dollar in nominal damages be added to the verdict.  The judge found for the defendants on the Title VII claim.

The defendants appeal the jury verdict, raising seven issues: 1) whether plaintiff's claim fails to rise to the level of a procedural due process violation, 2) whether the District Court erred in allowing plaintiff to amend her complaint to add a claim under § 1983, 3) whether the District Court erred in altering the judgment to add nominal damages, 4) whether the District Court erred in awarding attorney's fees under 42 U.S.C. § 1988, 5) whether the District Court erred in ruling that Robert Brisbane, Herbert Mabry, Ellinor Dye, and Charles Cherry were not entitled to judicial immunity, 6) whether William Elsea, Robert Brisbane, Ellinor Dye, Herbert Mabry, and Charles Cherry are entitled to qualified immunity, and 7) whether the District Court erred in ruling that the plaintiff presented sufficient evidence for the jury to award punitive damages.

The plaintiff cross-appealed, raising four issues: 1) whether the District Court in the Title VII case improperly discounted

Plaintiff's direct evidence of discrimination, 2) whether the District Court in the Title VII case adequately complied with this Court's mandate from the prior appeal and adequately deferred to the jury's findings from the § 1983 claim, 3) whether the District Court erred in not allowing Caban-Wheeler to present evidence regarding the race of her replacement, and 4) whether the District Court erred in calculating attorney's fees.

## II. ANALYSIS

### A. Defendant's Issues on Appeal

### i. the Procedural Due Process Claim

In *McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994) (en banc), *cert. denied,* --- U.S. ----, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995), the Eleventh Circuit Court of Appeals held that even where an employee suffers a procedural deprivation during a termination hearing, that employee has not suffered a violation of her procedural due process rights unless the state refuses to "make available a means to remedy the deprivation." *Id.* at 1563. The defendants in this case argue that Caban-Wheeler did not take her claim to state court, and thus under *McKinney,* she suffered no violation of her procedural due process rights; the state of Georgia provides an available and adequate state law remedy for the alleged wrongful termination procedure.

It may be true that under *McKinney* Caban-Wheeler suffered no violation of her procedural due process rights; however, the defendants failed to raise this issue in the District Court. While the decision in *McKinney* involved a change in the law that is to be applied retroactively, *Id.* at 1566, appellate courts generally will

not consider an issue first raised on appeal, *FDIC v. Verex Assurance, Inc.,* 3 F.3d 391, 395 (11th Cir.1993).

In *Narey v. Dean,* 32 F.3d 1521 (11th Cir.1994), the court chose to exercise its discretion to consider the *McKinney* issue even though the defendants failed to raise that issue until after trial.  The court in*Narey* chose to exercise its discretion because after *McKinney* the proper resolution of the issue was beyond any doubt.  *Id.* at 1527.  We choose not to exercise our discretion to hear an issue first raised on appeal because we believe the jury verdict did not result in a miscarriage of justice in light of the numerous suspicious discriminatory circumstances in this case and because the availability of a state court remedy was not developed in the trial court.[1]

## ii. the Amended Complaint

When Caban-Wheeler moved to amend her complaint to add a § 1983 claim for violation of her due process rights, the defendants argued that the motion should be denied because the statute of limitations for the § 1983 claim had already run.  However, under Rule 15 of the Federal Rules of Civil Procedure, the decision whether to allow a plaintiff to amend the complaint is separate from, and based upon a different standard than, the decision whether the new claim relates back to the original complaint. After the District Court allowed Caban-Wheeler to amend the complaint, the defendants did not move to dismiss the complaint and did not plead in their amended answer that the statute of

---

[1]The facts of this case are more fully set out in the previous appeal, *Caban-Wheeler v. Elsea,* 904 F.2d 1549 (11th Cir.1990).

limitations had run on the § 1983 claim.[2]  Thus the District Court never ruled on whether the new claim related back to the original complaint under Rule 15(c) of the Federal Rules of Civil Procedure or on whether the statute of limitations barred the claim.  By never raising this affirmative defense in the District Court, the defendants waived it.

### iii. Nominal Damages

The defendants contend that it was error for the District Court to amend the verdict to reflect one dollar in nominal damages after the jury found no actual damages, and that the punitive damages award cannot stand where no nominal or actual damages were found.  According to the defendants, the Supreme Court in *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) and *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) merely held that a procedural due process violation is actionable for nominal damages even absent proof of actual damages.  Thus in this case, where the jury awarded no actual damages and where Caban-Wheeler requested no jury instruction regarding nominal damages, she is not entitled to nominal damages.

We read the Supreme Court precedent differently.  In *Farrar,* the Court stated, "*Carey* obligates a court to award nominal damages

---

[2]The pre-trial order for both the first and the second trials contained an assertion by the defendants that they had been "severely prejudiced" by the District Court's order allowing the plaintiff to amend the complaint "to include a claim under 42 U.S.C.A. § 1983 that, otherwise, would have been barred by the statute of limitations under Georgia law."  Even if this language could be read as raising the affirmative defense that the statute of limitations had run on the § 1983 claim, the defendants produced no evidence at trial regarding the statute of limitations and did not move for a ruling on that affirmative defense.

when a plaintiff establishes the violation of his right to procedural due process but cannot prove actual injury." *Farrar,* 506 U.S. at ----, 113 S.Ct. at 573. In this case, the jury expressly found that Caban-Wheeler's procedural due process rights were violated, and so the District Court did not err in awarding nominal damages.

### iv. Was Caban-Wheel a Prevailing Party?

Because Caban-Wheeler obtained a valid judgment for nominal damages as well as punitive damages, she was a prevailing party for purposes of 42 U.S.C. § 1988. *See Farrar,* at ----, 113 S.Ct. at 573. Nominal damages alone are sufficient. *Id.*

### v. Judicial Immunity

Next, the defendants argue that the District Court erred in ruling that Robert Brisbane, Herbert Mabry, Ellinor Dye, and Charles Cherry had waived any defense of judicial immunity. This case was first filed in 1986. The defendants failed to raise this issue in the first trial, on the first appeal, and in the second trial on remand. The judicial immunity defense was raised for the first time after the jury verdict in a renewed motion for judgment as a matter of law. Under Rule 50(b) of the Federal Rules of Civil Procedure, such a motion may be used to renew consideration of issues initially raised in a pre-verdict motion for judgment as a matter of law. Because this defense was not raised in such a motion for judgment as a matter of law, it would have been improper for the District Court to consider it in the renewed motion for judgment as a matter of law. Moreover, because the issue was not raised during trial or at any time before, the issue was waived.

*See FDIC v. Verex Assurance, Inc.,* 3 F.3d 391, 395 (11th Cir.1993); *Narey v. Dean,* 32 F.3d 1521, 1526 (11th Cir.1994).

### vi. Qualified Immunity

The defendants also argue that William Elsea, Robert Brisbane, Ellinor Dye, Herbert Mabry, and Charles Cherry are entitled to qualified immunity. This Court has appellate jurisdiction to review District Court decisions for error. *See* 28 U.S.C. § 1291; *FDIC v. Verex Assurance, Inc.,* 3 F.3d 391, 395 (11th Cir.1993). Because this issue was not raised in the District Court, the District Court committed no error.

### vii. Punitive Damages

Last, the defendants argue that the District Court erred in ruling that there was sufficient evidence to authorize the jury's award of punitive damages. This issue was raised in a renewed motion for judgment as a matter of law, and so we must:

> consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party. If the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary [conclusion], then the motion was properly granted. Conversely, if there is substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions, then such a motion was due to be denied....

*Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989).

The defendants contend that Caban-Wheeler failed to produce any evidence of malicious intent sufficient to support an award of punitive damages. The District Court found that Caban-Wheeler presented sufficient evidence of such intent so that a jury could conclude that punitive damages were warranted. We agree. Caban-Wheeler presented evidence from which a reasonable jury could

conclude, first, that the defendants maliciously, wantonly, or oppressively[3] quashed subpoenas at the review hearing, and second, that portions of the tape recording from the hearing were maliciously, wantonly, or oppressively erased.

### B. Plaintiff's Issues on Cross-Appeal

### i. Direct Evidence of Discrimination on the Title VII Claim

Caban-Wheeler argues that the District Court improperly discounted her direct evidence of discrimination. Such evidence, if credited by the court, may necessitate shifting the burden of proof to the defendants to show that the same decision regarding Caban-Wheeler's termination would have been made even if race was not an issue. *Caban-Wheeler,* 904 F.2d at 1555.

Caban-Wheeler testified at trial that Defendant Ricks told her that he wanted a Black person in Caban-Wheeler's job. The District Court did not credit this testimony for two reasons: 1) Ricks denied the allegation, and 2) this allegation was absent from Caban-Wheeler's charge of discrimination filed with the Equal Employment Opportunity Commission.

In fact, however, Caban-Wheeler did include a similar allegation in her charge to the EEOC: "... Mr. Ricks told me he didn't think someone like me should be Director of the Project, he wanted a Black person as Director."

The issue is complicated by the fact that when the defendants introduced the discrimination charge into evidence, Caban-Wheeler testified that while she had included such an allegation in her

---

[3]The jury instructions, which were not challenged, required a finding of malicious, wanton, or oppressive conduct in order to award punitive damages.

charge, that allegation was not reflected in the defendants' exhibit, which was just a summary prepared by the EEOC. In fact, the exhibit was the charge of discrimination, and did include her allegation that Mr. Ricks wanted a Black person as Director. While Ms. Caban-Wheeler's mistake complicated the issue, the District Court's finding that Caban-Wheeler failed to include such an allegation in her charge to the EEOC was still clearly erroneous.

However, just because Caban-Wheeler made such an allegation to the EEOC does not mean that it was in fact true. The District Court failed to credit her testimony that Mr. Ricks told her he wanted a Black person as Director for another reason: Mr. Ricks denied that he made such a statement. Both Mr. Ricks and Ms. Caban-Wheeler testified at length and the District Court had the opportunity to evaluate the credibility of the witnesses. "When there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer, North Carolina,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Findings based on the credibility of witnesses demand "... even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Id.,* 470 U.S. at 575, 105 S.Ct. at 1512.

We are compelled to conclude that the District Court's decision not to credit Caban-Wheeler's testimony about Mr. Ricks is not clearly erroneous. That was the only direct evidence of discrimination, and so the District Court did not err in not

shifting the burden of proof to the defendants to show that the same decision would have been made in the absence of discrimination.

ii. Did the District Court comply with this Court's prior mandate and with the jury findings from the § 1983 trial?

Caban-Wheeler argues next that the District Court did not comply with this Court's decision in the first appeal in this case. This Court, in *Caban-Wheeler v. Elsea,* 904 F.2d 1549 (11th Cir.1990), remanded for a new trial, with the following mandates: 1) the court must address Caban-Wheeler's testimony that Ricks told her he wanted a Black person for the job, *Id.* at 1555; 2) the court must address Caban-Wheeler's seemingly plausible explanation as to why her actions did not involve insubordination, *Id.* at 1555-56; 3) the court must address Melba Hill's possible attempts to fabricate evidence to create the appearance of progressive discipline, *Id.* at 1556; and 4) the court must address the fact that Caban-Wheeler's termination occurred a mere five days after the hearing following her suspension and the fact that certain testimony from that hearing was erased.

The District Court addressed each of these issues in its Findings of Fact.[4]  Just because the court ruled against Caban-

---

[4]The first issue was discussed earlier in this opinion; the District Court credited Mr. Ricks' testimony rather than Ms. Caban-Wheeler's testimony. The District Court disposed of the second issue by finding that Ms. Caban-Wheeler's explanation as to why she did not formally sign-up participants in the program was insufficient. The signed forms may not have been important to Caban-Wheeler, but they were important to Ms. Hill, who was Ms. Caban-Wheeler's supervisor. The District Court concluded that this, along with Caban-Wheeler's failure to prepare a requested document until she had been suspended, was sufficient evidence of insubordination. Third, the District Court rejected Caban-Wheeler's contention that evidence had been fabricated to

Wheeler after considering those issues does not mean that it violated this Court's mandate. The District Court's factual findings on these matters were not clearly erroneous.

Caban-Wheeler also argues that the District Court was bound by any determinations the jury made regarding the § 1983 claim, and that the court did not properly abide by the jury findings when deciding the Title VII claim. Specifically, Caban-Wheeler argues that the jury awarded punitive damages for her procedural due process claim, and so must have found malicious intent.

"When a party has the right to a jury trial on an issue involved in a legal claim, the judge is of course bound by the jury's determination of that issue as it affects his disposition of an accompanying equitable claim." *Lincoln v. Board of Regents of the University System of Georgia,* 697 F.2d 928, 934, *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983). A legal action under § 1983 entails the right to a jury trial while an equitable action under Title VII[5] does not. *Id.* Thus the judge in this case, when deciding the Title VII claim, was bound by the jury's

create evidence of progressive discipline; the memorandum was simply dated incorrectly. The court found that there was no evidence, other than Caban-Wheeler's conjecture, that the evidence was fabricated, and that the concerns expressed in the memorandum were valid. Last, the court found that the erasure of the tape was accidental, that Caban-Wheeler's complaint about the hearing more properly went to her procedural due process claim, and that there was no allegation or evidence that there was a casual connection between her decision to appeal her suspension and her termination.

[5]Caban-Wheeler's motion to amend her complaint to seek a jury trial on the Title VII claim under the Civil Rights Act of 1991 was denied; the District Court ruled that the Act is not retroactive. *See also Baynes v. AT & T Technologies, Inc.,* 976 F.2d 1370 (11th Cir.1992).

findings on the § 1983 due process claims.

However, the judge's findings on the Title VII claim did not directly conflict with the jury's findings on the procedural due process claim. The jury instructions in this case authorized the jury to award punitive damages if the jurors found that the defendants had acted maliciously, wantonly, or oppressively.[6] The jury instructions defined a wanton act as an act "done in reckless or callous disregard of, or indifference to, the rights of the injured person." Thus the jury may have found that the defendants acted recklessly in regard to Caban-Wheeler's procedural due process rights, but did not intentionally discriminate based on her race, sex, or national origin, as required by Title VII. The jury's finding that Caban-Wheeler's substantive due process rights were not violated supports this possibility.

iii. Evidence of the Race of Caban-Wheeler's Replacement

Caban-Wheeler next argues that the District Court erred by not allowing her to present evidence of racial motive to the jury. The only action by the District Court in this regard was the order granting the defendants' motion to bar Caban-Wheeler from introducing evidence of the race of Caban-Wheeler's replacement, Ms. Elleen Yancey, and of Ms. Yancey's subsequent promotions. However, Ms. Yancey testified at trial, and so her race was most likely evident. In addition, Caban-Wheeler's counsel cross examined Yancey regarding her subsequent promotions.

iv. Calculating Attorney's Fees

---

[6]This jury instruction was not challenged, and we make no comment on the correctness of the wording in the charge.

Last, Caban-Wheeler argues that the District Court erred in calculating the amount she is entitled to in attorney's fees. The District Court found plaintiff's requested rate of two hundred dollars an hour to be reasonable. The court then ruled that the "96.3 hours spent through the first trial and appeal were reasonable," but the "additional 291.75 hours (excluding specific hours spent on the Title VII claim)" were not reasonable because those hours include time spent on trial preparation or in trial, and so reflect time spent on two distinct and unsuccessful claims. In addition, the court found it unreasonable that the attorneys spent seventy three hours reviewing trial transcripts and trial exhibits. For those reasons, the court ruled that a total of 196.30 hours were reasonably spent on this case.

Caban-Wheeler argues that she had already excluded time spent on the Title VII claim, and so the trial court double deducted those hours; moreover, no time should be deducted for the unsuccessful substantive due process claim because she had already deducted over two hundred hours from the total time spent on the due process issues and because she would have spent just as much time preparing for the successful procedural due process claim even without the substantive due process claim. In addition, Caban-Wheeler argues that the court simply miscounted how much time was spent on the first trial and first appeal; instead of 96.3, counsel spent 309.75. Lastly, Caban-Wheeler disputes the court's ruling that only one hundred hours was reasonable for time spent after the successful appeal, especially considering that the second trial itself took seventy-three hours.

The District Court may have double deducted the Title VII time[7] and may have miscounted how much time was spent on the first trial and the first appeal,[8] so we remand for a more thorough examination of these issues.

## III. CONCLUSION

We AFFIRM the District Court's rulings on all issues except for the calculation of attorney's fees, and REVERSE and REMAND for further proceedings only in that regard.

---

[7]Caban-Wheeler claims she already deducted the time spent on the Title VII claim, but as the District Court noted, the time spent preparing for the second trial and the time spent during the second trial necessarily include time spent on the Title VII claim.

[8]Caban-Wheeler's motion for attorney's fees reflects several mathematical errors.