United States Court of Appeals, Eleventh Circuit.

No. 95-9197.

VISTA COMMUNITY SERVICES, Movant,

James H. Narey, Plaintiff-Appellee,

v.

Darrell DEAN, Individually and in his official capacity as Georgia Department of Human Resources, District One, District Medical Director, John J. Gates, Individually and in his official capacity as Georgia Department of Human Resources, Division of Mental Health, Mental Retardation and Substance Abuse, Division Director, James G. Ledbetter in his official capacity as Commissioner of the Georgia Department of Human Resources, and James K. Moss, Sr., Individually, Defendants-Appellants.

March 19, 1997.

Appeal from the United States District Court for the Northern District of Georgia. (No. 4:90-CV-063-HLM), Harold L. Murphy, District Judge.

Before ANDERSON, Circuit Judge, and FAY and KRAVITCH, Senior Circuit Judges.

FAY, Senior Circuit Judge:

Defendants appeal the district court's denial of their motion for summary judgment based on qualified immunity. We vacate and remand.

I.

James Narey ("Plaintiff") filed suit under 42 U.S.C. § 1983 against Darrel Dean, John Gates, Tommy Olmstead, [1] and James Moss (collectively "Defendants"), alleging that Defendants violated his Fifth and Fourteenth Amendment rights to due process by demoting him from his tenured position as Director of the Northwest Georgia

---

[1] Plaintiff originally filed his complaint against James G. Ledbetter in his individual capacity as Commissioner of the Georgia Department of Human Resources. Pursuant to Fed.R.Civ.P. 25(a) and Fed.R.App.P. 43(c), Ledbetter's successor in office, Tommy Olmstead, has been substituted as a party-defendant.

Community Mental Health Center (the "Center") in Fort Oglethorpe, Georgia. As the reason for Plaintiff's demotion, Defendants cited numerous problems with Plaintiff's management of the Center, including improper commingling of Center funds, improper handling of client funds, misuse of state grant-in-aid funds, failure to comply with accountant recommendations regarding fiscal responsibility and drug inventory, and improper handling of leases. Plaintiff countered, however, that Defendants had concocted these "trivial, technical, minute and inconsequential" charges against him merely to remove him from his position. At trial, Plaintiff asserted two claims relevant to this appeal: First, Plaintiff claimed that Defendants demoted him for pretextual reasons in violation of his constitutional right to substantive due process. Second, Plaintiff claimed that Defendants improperly failed to satisfy the requirements of progressive discipline before demoting him. Both claims were sent to the jury; the jury returned a $1.7 million verdict in Plaintiff's favor.

On appeal, this Court reversed that verdict, holding that our decision in *McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995), precluded Plaintiff from maintaining a substantive due process claim based on pretextual firing. *Narey v. Dean,* 32 F.3d 1521, 1526-28 (11th Cir.1994). Prior to *McKinney,* the law of our Circuit was that " "[a] violation of a public employee's right to substantive due process occur[red] when an employer deprive[d] the employee of a property interest for an improper motive and by means that [were] pretextual, arbitrary and capricious, regardless of

whether or not a hearing was held.' " *McKinney,* 20 F.3d at 1558-59 (quoting *Nolin v. Douglas County,* 903 F.d. 1546, 1553-54 (11th Cir.1990) (internal quotation marks omitted) (alterations not in original)). In *McKinney,* we overruled the line of cases establishing that law, and instead established that an allegation of pretextual firing implicates only procedural, and not substantive due process. *Id.* at 1564-65; *see also Narey,* 32 F.3d at 1526 (discussing *McKinney* ). Thus, after *McKinney,* Plaintiff was entitled to maintain only a procedural due process claim against Defendants. *Narey,* 32 F.3d at 1527. In assessing that claim, we found that Plaintiff had been afforded adequate procedural protection both before and after his demotion; we therefore ruled that Defendants had not deprived Plaintiff of his right to procedural due process. *Id.* at 1528.

Defendants did not challenge the propriety of Plaintiff's progressive discipline claim, but Plaintiff conceded that his progressive discipline claim alone could not support the jury's $1.7 million verdict. *Id.* We remanded the case to the district court for further consideration of that claim. *Id.*

On remand, however, the district court permitted Plaintiff to amend his complaint to allege that Defendants terminated him because of his speech in violation of his First Amendment rights.[2] Once again Plaintiff claimed that Defendants' cited reasons for demoting him were pretextual; this time, Plaintiff argued that

---

[2]The district court also permitted Plaintiff to add an equal protection claim, but it later granted Defendants' motion for summary judgment as to that claim. The court's ruling on the equal protection claim is not an issue in this appeal.

Defendants actually demoted him in retaliation for statements made by Plaintiff to the Governor's Advisory Council on Mental Health/Mental Retardation/Substance Abuse (the "Council"). During a discussion with Council members, Plaintiff explained that his program at the Center saved state funds by shifting local revenue sources. Those comments followed a presentation by Plaintiff's staff member regarding their program's significant accomplishments without state funding. Plaintiff's statements apparently angered and embarrassed Defendants because they were requesting $6-7 million in state appropriations. After Plaintiff made the statements, Defendants became hostile toward him, and according to Plaintiff, thereafter sought to remove him from his position.

Defendants moved for summary judgment on both the remanded progressive discipline claim and the newly added First Amendment claim; on the First Amendment claim, Defendants argued that they were entitled to qualified immunity. The district court granted Defendants' motion as to the progressive discipline claim,[3] but denied the motion as to the First Amendment claim. In so doing, however, the court explicitly stated that it did not reach the qualified immunity issue. Instead, the court concluded that Plaintiff had produced sufficient evidence to create a jury question as to whether he was demoted for his speech, or for his inappropriate actions as revealed by Defendants' investigation. The existence of that jury question, according to the court, obviated the need to address whether Defendants were entitled to

---

[3]The court's disposition of the progressive discipline claim is also not an issue in this appeal.

qualified immunity.  Defendants now challenge that ruling.

Defendants also challenge the district court's decision to permit Plaintiff to amend his complaint after this Court's remand of the case.  They argue that, in permitting the amendment, the district court improperly expanded our mandate on remand.  *See Litman v. Massachusetts Mut. Life Ins. Co.,* 825 F.2d 1506, 1511 (11th Cir.1987) (stating that district court acting under appellate court's mandate cannot give any relief further than that necessary to settle so much as has been remanded).  Defendants further argue that the doctrine of *res judicata* bars Plaintiff's First Amendment claim, or in the alternative, that Plaintiff waived that claim in the first trial of this case.  Those issues, however, are not appealable at this stage of the proceedings.[4]  *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 142-44, 113 S.Ct. 684, 686-88, 121 L.Ed.2d 605 (1993);  *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949).  We properly consider only whether the district court erred in failing to decide if Defendant's were entitled to qualified immunity.  We hold that the court did so err.

II.

---

[4]We reject Defendants' contentions that these issues are sufficiently intertwined with the qualified immunity issue to warrant the exercise of pendent appellate jurisdiction.  In *Swint v. Chambers County Commission,* 514 U.S. 35, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), the Supreme Court suggested that appellate review might exist where an otherwise nonappealable question is "inextricably interwoven" with an issue properly before us.  *Id.* at ----, 115 S.Ct. at 1212.  The facts of this case do not present us with such a situation.  *See also Haney v. City of Cumming,* 69 F.3d 1098, 1102 (11th Cir.1995) (refusing jurisdiction under *Swint* because issues were not sufficiently intertwined with defendants' qualified immunity defense).

We review *de novo* a district court's ruling that a government official's conduct violated clearly established law such that the official is not entitled to qualified immunity. *Johnson v. Clifton,* 74 F.3d 1087, 1090 (11th Cir.), *cert. denied,* --- U.S. ----, 117 S.Ct. 51, 136 L.Ed.2d 15 (1996) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817-18, 86 L.Ed.2d 411 (1985)). Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Cartrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## III.

Qualified immunity shields government officials performing discretionary functions from civil liability "insofar as their conduct does not violate clearly established.... constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

### A.

Plaintiff contends that, under the Supreme Court's decision in *Johnson v. Jones,* --- U.S. ----, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), this Court does not have jurisdiction to hear Defendants' interlocutory appeal of the denial of qualified immunity. We disagree.

A government official may immediately appeal the denial of qualified immunity when the issue appealed concerns whether or not

certain facts show a violation of "clearly established law." *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). In *Johnson,* the Supreme Court further elaborated on that concept by making it explicit that where the only issue on appeal is a question of " "evidence sufficiency,' i.e., which facts a party may or may not, be able to prove at trial", the district court's ruling on qualified immunity is not immediately appealable. *Id.* at ----, 115 S.Ct. at 2156. The issue in *Johnson* was whether there was sufficient evidence to raise a genuine issue of material fact as to whether the government defendants had been involved in the plaintiff's beating. *Id.* at ---- - ----, 115 S.Ct. at 2153-54. The defendants admitted both that the beating was unconstitutional and that it violated clearly established law; their only argument on appeal was that the district court erred in finding an issue of material fact as to their involvement in the unconstitutional conduct. *Id.* at ----, 115 S.Ct. at 2154. Based on those facts, the Supreme Court held that the district court's ruling could not be immediately appealed. *Id.* at ---- - ----, 115 S.Ct. 2156-58.

Defendants here make both evidence sufficiency arguments and arguments aimed at the "clearly established law" inquiry. On the evidence sufficiency front, they primarily argue that Plaintiff presented no credible evidence that Plaintiff himself made any public statements, that Defendant Gates was upset at those statements, or that Defendant Dean—the person who actually proposed the adverse action—had any knowledge of the events at the meeting with Council members. Appellants' Initial Br. at 45. On the

clearly established law front, Defendants argue that Plaintiff failed to cite any law with materially similar facts that would have told Defendants their conduct was unconstitutional.[5] *See* Appellants' Initial Br. at 47-9; Appellants' Reply Br. at 10-24. Furthermore, as discussed in more detail below, Defendants also challenge the district court's failure to apply the appropriate legal analysis in determining whether their conduct violated clearly established law. *See* Appellants' Initial Br. at 39-40. Because Defendants challenge all of these issues, and not merely the sufficiency of the evidence, we conclude that we have jurisdiction to hear this appeal. *See Foy v. Holston,* 94 F.3d 1528, 1531-32 n. 3 (11th Cir.1996) (stating that we have jurisdiction where both factual issue and clearly established law issue are appealed); *Cottrell v. Caldwell,* 85 F.3d 1480, 1484-86 (11th Cir.1996) (same); *Johnson v. Clifton,* 74 F.3d 1087, 1091 (11th Cir.), *cert. denied,* --- U.S. ----, 117 S.Ct. 51, 136 L.Ed.2d 15 (1996) (same).

B.

In order to defeat Defendants' right to qualified immunity, Plaintiff must have demonstrated (i) that Defendants' conduct

---

[5]In arguing that Defendants actions did not violate clearly established law, Defendants saved the bulk of their argument for their reply brief. Defendants chose to do that apparently because they did not feel Plaintiff had met its burden in coming forward with relevant First Amendment case law. Although it may have been Plaintiff's burden to establish that Defendants' conduct violated clearly established law, it was Defendants' burden to establish jurisdiction in our Court. Perhaps Defendants should be more conscious of that in the future.

violated his clearly established First Amendment rights,[6] and (ii) that a reasonable government official would have been aware of those rights. *Tindal v. Montgomery County Comm'n,* 32 F.3d 1535, 1539 (11th Cir.1994). It was the district court's task to ascertain whether Plaintiff had met its burden. *See Clifton,* 74 F.3d at 1091 (stating that district court must determine whether there is genuine issue of material fact as to whether Defendant committed conduct that violated clearly established law).

In assessing the first part of the qualified immunity analysis—i.e., in determining whether an employee's clearly established First Amendment rights have been violated—we conduct a four-part inquiry ("the *Bryson* test"). *See Bryson v. City of Waycross,* 888 F.d. 1562, 1565 (11th Cir.1989); *Clifton,* 74 F.3d at 1092; *Beckwith v. City of Daytona Beach Shores, Fla.,* 58 F.3d 1554, 1563 (11th Cir.1995); *Tindal,* 32 F.3d at 1539. First, we determine whether the employee's speech may be "fairly characterized as constituting speech on a matter of public concern." *Id.* (quoting *Rankin v. McPherson,* 483 U.S. 378, 384, 107 S.Ct. 2891, 2897, 97 L.Ed.2d 315 (1987)). Second, if the speech addresses a matter of public concern, we apply the *Pickering* balancing test, "weighing the employee's first amendment interests against "the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Id.* (quoting *Pickering v. Board of Education,* 391

---

[6]Of course, at the summary judgment stage of the proceedings, Plaintiff need not prove his case. He need only proffer evidence sufficient to create a genuine issue of material fact as to whether Defendants violated his clearly established rights.

U.S. 563, 568, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968)). If the employee prevails on the balancing test, we next inquire as to whether the employee's speech played a "substantial part" in the challenged employment decision ("the *Mt. Healthy* causation question"). *Id.* (citing *Mt. Healthy City School District Bd. of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). Finally, if the employee shows that his speech was a substantial motivating factor, we ask whether the employer would have terminated the employee even in the absence of the protected speech. *Id.* (citing *Mt. Healthy,* 429 U.S. at 286, 97 S.Ct. at 575-76).

In the case at hand, the district court determined both that Plaintiff's speech addressed a matter of public concern (part 1) and that Plaintiff had presented sufficient evidence to establish a genuine issue of material fact as to whether his speech was a substantial factor in the actions taken against him (part 3). The court did not, however, perform the *Pickering* balancing test (part 2) or ask if there was a genuine issue of material fact as to whether Defendants would have terminated Plaintiff regardless of his speech (part 4). According to the court, the *Pickering* analysis is appropriate:

> only when the state fires an employee for conduct that turns out to be protected, but that the state as an employer has an interest in not tolerating such conduct [sic]. The [c]ourt may also conduct the *Pickering* analysis if the state claims that, although the employee did engage in protected conduct, it fired him for *related* unprotected conduct. However, if the conduct for which the state claims to have fired the employee is *unrelated* to the protected conduct, a *Mt. Healthy* causation question is presented, and that question is for the jury.

Order dated August 28, 1995, at 14 (emphasis in original). Because

Defendants claimed they fired Plaintiff for reasons *unrelated* to his speech, the court declined to apply *Pickering* to the facts of this case. Further, the court stated that, "[b]ecause under the circumstances of this case, Defendant[s'] alleged reasons for their actions involve a *Mt. Healthy* causation question and not a *Pickering* balancing, *the [c]ourt does not reach the qualified immunity issue." Id.* (emphasis added).

As a preliminary matter, we note that the court's statement that it did not reach the qualified immunity issue is not totally accurate. The *Mt. Healthy* question is often a part of the qualified immunity analysis, not always separate from it. *See also Foy v. Holston,* 94 F.3d 1528, 1534 (11th Cir.1996) (recognizing that *Mt. Healthy*-type concerns must not be overlooked in qualified immunity analysis). By recognizing the existence of the *Mt. Healthy* causation question, the court was addressing part 3 of the *Bryson* test. Thus, the court did reach part of the qualified immunity issue, but it failed to complete that inquiry because it believed that the existence of the *Mt. Healthy* causation question obviated the need to go further. That conclusion, however, is simply not correct.

The four-part inquiry—including the *Pickering* balancing test—is to be applied in those cases "where the state denies discharging the employee because of speech...." *Bryson,* 888 F.d. at 1565. In those cases where the employer's claimed reasons are unrelated to the speech, we still apply the *Pickering* balancing test. *See Beckwith v. City of Daytona Beach Shores, Fla.,* 58 F.3d 1554 (11th Cir.1995) (applying *Pickering* where employer's alleged

reason for firing employee was employee's violation of departmental residency requirement); *Tindal v. Montgomery County Comm'n,* 32 F.3d 1535 (11th Cir.1994) (applying *Pickering* where employer's alleged reason for firing employee was employee's failure to submit to requested psychiatric evaluation). The *Pickering* balancing test and the remainder of the qualified immunity inquiry must be done before a case is sent to the jury for its determination of whether a plaintiff was actually fired for his speech. To do otherwise deprives defendants of the benefit of their qualified immunity defense: "The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

Based on the foregoing discussion, we conclude that the district court erred in failing to apply the *Pickering* balancing test to the facts of this case. The court further erred in not performing the remainder of the qualified immunity analysis (part 4 of the *Bryson* test and the reasonable public official inquiry). We make no comment on the correctness of the district court's resolution of parts 1 and 3 of the *Bryson* test. We simply vacate and remand so that the court may complete its inquiry and fully determine whether Defendants are entitled to qualified immunity. The order denying summary judgment is vacated and the matter remanded with instructions.

Vacated and Remanded.